Steven Bruce HILL, Appellant,

v.

The STATE of Texas.

No. 2–94–089–CR.

Court of Appeals of Texas, Fort Worth.

April 20, 1995.

---

Allan K. Butcher, Allan K. Butcher, Jr., Law Offices of Allan K. Butcher, Daniel L. McBride, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chiefs Appellate Section, Lynn Allison Bollish, Richard Alpert, Andrea Rentie, Asst. Dist. Attys., Fort Worth, for State.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

DAY, Justice.

This case of first impression involves an allegation that appellant Steven Bruce Hill knowingly caused the unwarranted commitment of his stepfather, Donald Dowdy, to a mental health facility. *See* TEX. HEALTH & SAFETY CODE ANN. § 571.020 (Vernon 1992). A jury convicted appellant, and the trial court assessed his punishment at confinement for one year and a $5,000.00 fine, with $4,500.00 of the fine and the confinement probated for two years. Appellant challenges his conviction through three points of error. We sustain his first point of error, reverse the judgment of the trial court, and remand with instructions to enter an acquittal.

## FACT SUMMARY

Donald and Betty Dowdy married in November, 1988 and divorced in the spring of 1992. Appellant and Richard Hill, Betty's sons, helped her move out of the Dowdys' home. Relations between Betty Dowdy's sons and Donald Dowdy became increasingly hostile. On at least one occasion, May 6, 1992, Donald Dowdy called the Crowley Police after Richard Hill began shouting threats while at the house. Donald Dowdy also began receiving anonymous harassing telephone calls.

Appellant testified that he became concerned about Donald Dowdy's mental health after allegedly being told by his mother that Donald Dowdy's temperament was extremely moody and by Donald Dowdy's sister-in-law that he had been diagnosed as a paranoid schizophrenic. Appellant then called the Crisis Hot Line, which referred him to the Tarrant County Department of Mental Health and Mental Retardation.

On May 14, 1992, appellant met with Glenn Cherry, a caseworker with the Department of Mental Health and Mental Retardation. During the 30–minute meeting, Cherry interviewed appellant and eventually completed an application for the emergency apprehension and detention of Donald Dowdy, claiming that he had previously received mental health treatment,[1] that he threatened to kill his estranged wife and himself, that he was isolated from family and that his agitated behavior was growing increasingly hostile. Appellant signed the application under oath.

Cherry gave the materials to appellant to take to a justice of the peace, who, in turn, issued a warrant for Donald Dowdy's apprehension based on the allegations of prior mental treatment and that he posed a threat to himself or others. That same day, Donald Dowdy was taken by Tarrant County sheriff's deputies to John Peter Smith Hospital for psychiatric evaluation. After a preliminary examination by a nurse and an intern who determined he had no acute mental illness, Donald Dowdy was released and allowed to return home.

## POINT OF ERROR ONE

In his first point of error, appellant claims there was no evidence of one of the elements of the offense, specifically the commitment of Donald Dowdy. The statute under which appellant was charged provides as follows:

(a) A person commits an offense if the person intentionally causes, conspires with another to cause, or assists another to cause the unwarranted commitment of a person to a mental health facility. An offense under this subsection is a misdemeanor punishable by fine of not more than $5,000, confinement in the county jail for not more than two years, or both.

See TEX. HEALTH & SAFETY CODE ANN. § 571.020 (Vernon 1992). Both the information and the charge to the jury contained the following language:

[Appellant did] knowingly and intentionally cause the unwarranted commitment of Donald Dowdy Sr. to a mental health facility, to-wit: John Peter Smith Hospital, Fort Worth, Texas, by making a false statement to Glenn Cherry that said Donald Dowdy Sr. had previously been treated for mental health and was suicidal and dangerous to himself and others, then and there knowing said statement to be false and with the intent to cause Donald Dowdy Sr. to be committed to a mental hospital.

Appellant's theory is that a person is not "committed" until a judge or jury concludes after a trial that court-ordered mental health services can be obtained and that such a proceeding occurs only *after* a person has been "admitted" to a mental health facility for emergency detention and an application for court-ordered mental health services has been prepared and requested. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.034, 574.035 (Vernon 1992).

Appellant acknowledges that if the evidence is viewed in the light most favorable to the State, one could argue that appellant's sworn statements to Cherry caused Cherry to prepare the necessary papers that were given to the justice of the peace who, based on those papers and other information, issued the warrant by which Donald Dowdy was taken into custody. The authority of the justice of the peace to issue a warrant to take a person into custody is found in article 573.012 of the Health and Safety Code but that the statute does not speak of "commitment." Appellant maintains the section provides for the "apprehension" of an individual and the warrant serves as "an application for detention" in a mental health facility. Appellant continues his analysis of the Code to point out that section 573.021 provides that a mental health facility, such as the unit in John Peter Smith Hospital in which Dowdy was evaluated, "shall temporarily accept a person for whom an application for detention is filed." Appellant asserts this is an "acceptance" rather than "an admission" to the facility. Article 573.021 requires that a phy-

1. At trial, Dowdy unequivocally denied ever having received treatment for mental illness. There was no proof to the contrary, although appellant testified during the trial on punishment that he had been told by Donald Dowdy's sister-in-law that Donald Dowdy had previously received treatment.

sician examine a person within twenty-four hours of the time he is apprehended to determine whether that person should be "admitted" to the facility. Appellant reasons that if such a "preliminary examination" does not show the person to be mentally ill and a threat to himself and others, then the person is to be released. *See* TEX. HEALTH & SAFETY CODE ANN. § 573.023 (Vernon 1992). Appellant argues this is what happened in the instant case and that the "commitment" process stopped at this point.

Appellant contends a "commitment order" should be defined as "a court order for involuntary inpatient mental health services" under article 571.003(3) of the Health and Safety Code and that all proceedings prior to the time of a judge or jury trial on the issue are for the purposes of evaluation and determination of the need for mental health services. Appellant insists that there is nothing in the evidence to suggest Donald Dowdy was ever "committed," although he concedes Dowdy was detained and subjected to a preliminary examination. Appellant asserts this is not a "commitment" and therefore the State presented no evidence on this element of proof required by their pleadings and the statute under which it sought conviction.

The State's contentions, to be discussed in greater detail below, can be summarized as follows:

(1) Appellant's interpretation of "commitment" as necessarily describing a more permanent commitment, such as court-ordered mental health services, is contrary to common usage of the word;

(2) Appellant's interpretation of "commitment" conflicts with the American Bar Association's definition of "commitment."

(3) Appellant's interpretation of "commitment" conflicts with the American Medical Association's definition of "commitment."

(4) Appellant's interpretation of "commitment" conflicts with the Black's Law Dictionary definition of "commitment."

(5) Appellant's interpretation of "commitment" is contrary to the intent of the Legislature in enacting the statute.

### The "Common Usage" Argument

■ In interpreting a statute, the terms used must be read in the context in which they are used and should be construed in accordance with common usage. *See Bynum v. State,* 767 S.W.2d 769, 774 (Tex.Crim.App. 1989). The State claims that it is contrary to common usage of the word "commitment" to hold that it means "the ultimate entry of a court order for court-ordered mental health services." The State declares that the term "commitment" should be used to describe the entire process by which a person is forced to receive care and treatment. However, we are unconvinced that any common usage of the term "commitment" would encompass the instant situation, where Donald Dowdy was held for a total of two hours at John Peter Smith Hospital, released as soon as the attending intern determined he was not a danger to himself or others, and was promptly sent home in a taxi.

### The American Bar Association Definition of "Commitment"

The State cites Deborah Zuckerman and Marc Charmatz, *Mental Disability Law, A Primer,* 4th ed. (A.B.A. Commission on Mental and Physical Disability Law 1992), who define "commitment" as "a process by which individuals with mental illnesses, or other mental impairments ... are forced to receive care and treatment, usually in an inpatient setting."

The State again contends that "commitment" is a *process* but cannot point to a moment in time when a person is "committed"—be that when the telephone call is placed to the Department of Mental Health and Mental Retardation, when the justice of the peace authorizes the warrant, or when the person is taken to John Peter Smith Hospital. Although appellant may have set in motion the process by which an individual could be forced to receive care and treatment, there is no evidence that Donald Dowdy was forced to receive care and treatment, either in an inpatient or an outpatient setting. Thus, we do not find evidence that Donald Dowdy was "committed" according to the A.B.A. definition.

## The American Medical Association Definition of "Commitment"

The State provides for us the American Medical Association definition of "commitment":

> The process by which an individual suffering from a severe mental disorder is legally deprived of his or her freedom. A person is committed if he or she is likely to harm him- or herself or other people. Physicians who have examined the person explain to the court, usually in writing, why they believe he or she should be placed in a mental institution.

*American Medical Association Encyclopedia of Medicine,* Charles B. Clayman, M.D., Medical Editor (1989) at 294.

Again, while the State relies upon a definition which emphasizes the *process* of confining a person for court-ordered mental health treatment, as opposed to the final entry of the court order, the undisputed facts are that Donald Dowdy was never found to be a danger to himself or others, that Donald Dowdy was deprived of his freedom for what appears to be the minimum amount of time necessary to make such a determination, and that neither the examining intern nor any other medical professional attempted to convince the court that he needed to be placed in an institution. Reliance upon the A.M.A. definition also fails to convince us that Donald Dowdy was committed.

## The Black's Law Dictionary Definition of "Commitment"

The State insists that Black's Law Dictionary also refers to the entire process of committing an individual in defining "commitment." In its brief, the State provides the following definition:

> A warrant, order or *process* by which a court or magistrate directs ministerial officer to take person to penal institution *or mental health facility.... The proceedings directing confinement of a mentally ill or incompetent person for treatment.* Commitment proceedings may be either

civil or criminal; and voluntary or involuntary.

Black's Law Dictionary 273 (6th ed. 1990). Arguably, then, this excerpt supports the State's contention. However, we rely on the complete definition:

> A warrant, order, or process by which court or magistrate directs ministerial officer to take person to penal institution or mental health facility. Also, the act of taking or sending to the prison, mental health facility, or the like. *A person is committed when he is actually sentenced to confinement by a court as contrasted with a suspended sentence or probation.*
>
> The proceedings directing confinement of a mentally ill or incompetent person for treatment. Commitment proceedings may be either civil or criminal; and voluntary or involuntary.

Black's Law Dictionary 273 (6th ed. 1990) (emphasis added). Thus, not only does the text omitted from the State's passage undermine the State's argument, the selection strongly aids appellant, who has analogized "commitment" to a "conviction" in the criminal justice process by arguing that neither a "commitment" nor a "conviction" may occur until a trier of fact has reached that conclusion.

## The Legislative Intent Argument

The State also contends that appellant's interpretation is contrary to the intent of the Legislature because if section 571.020 applies only to incidents where a final stage of the commitment process is caused, then the statute would have no effect. The State relies upon the historical comment which followed the precursor to section 571.020, former Texas Revised Civil Statute art. 5547–19 (Vernon 1958): [2]

> For the further protection of the proposed patient, this new provision provides criminal penalties as a deterrent to "railroading."

**2.** *See* Act of May 20, 1957, 55th Leg., R.S., ch. 243, §§ 19, 20, 1957 Tex.Gen.Laws 509 (amended 1983) (current version at Tex. Health & Safety Code Ann. § 571.020 (Vernon 1992)). The enactment of section 571.020 was a codification, without any substantial change in language, of the former statute.

The State says that Donald Dowdy was at least a "proposed patient" and that the plain language of the statute indicates that the exact harm which occurred in this case is the harm intended to be prevented by the statute.

It is well-settled that courts must presume all parts of a statute were meant to have some effect. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988); *Ex parte Crouch*, 838 S.W.2d 252 (Tex.Crim.App.1992); *Dillehey v. State*, 815 S.W.2d 623, 626 (Tex.Crim. App.1991); *Childress v. State*, 784 S.W.2d 361, 364 (Tex.Crim.App.1990). The State maintains that the limited manner in which appellant suggests section 571.020 should apply would result in the statute having no effect.

■ The cardinal rule of statutory interpretation is to ascertain the legislative intent in enacting a statute. *Faulk v. State*, 608 S.W.2d 625, 631 (Tex.Crim.App.1980) (op. on reh'g). Such intent and a determination of the meaning of a statute is to be based upon the language of the statute itself. *Id.* Additionally:

> If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra* textual factors as executive or administrative interpretations of the statute or legislative history.

*Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991) (emphasis in original).

Although we have considered the historical comment provided by the State in our evaluation of section 571.020, we still reject the State's contention that the evidence supports appellant's conviction under these facts. It is not inherently inconsistent for us to recognize that a measure is intended to prevent "railroading" of "proposed patients" while at the same time holding that "commitment" means something more than the two-hour detention and immediate release of a person not found to be a danger to himself or others.

## SUFFICIENCY OF THE EVIDENCE

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

Not only was the evidence insufficient to establish commitment using these criteria, the evidence in fact established the opposite. Donald Dowdy spent approximately two hours at John Peter Smith Hospital before being evaluated and was sent home from John Peter Smith Hospital in a taxi as soon as the examining intern determined he was not a danger to himself or others. Although he may have been a "proposed patient" under the comment accompanying the former statute, it does not appear from the record that he was ever admitted as a patient, either to the psychiatric facility of John Peter Smith Hospital, a mental health facility,[3] or a

---

**3.** A "mental health facility" is defined as that identifiable part of a general hospital in which diagnosis, treatment and care for persons with mental illness is provided. *See* TEX. HEALTH &

mental hospital.[4]

Even if appellant fabricated Donald Dowdy's symptoms so as to make him appear to be more dangerous than he in fact was, appellant simply *attempted* to have him committed or committed perjury by signing the affidavit attesting to facts he may have known to be false. For these reasons, we find the evidence is insufficient to uphold the conviction. Point of error one is sustained.

In points of error two and three, appellant claims the statute is unconstitutionally vague and unconstitutionally overbroad as applied to him; however, because we are sustaining appellant's first point of error, we do not need to address points two and three. *See Skinner v. State,* 652 S.W.2d 773, 776 (Tex. Crim.App.1983) (holding that if the evidence is insufficient, a reviewing court need not address constitutional issues).

The judgment of the trial court is reversed, and this court remands to the trial court with instructions to enter an acquittal. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

SAFETY CODE ANN. § 571.003(12)(C) (Vernon's 1992). John Peter Smith Hospital is a "general hospital," defined as one operated primarily to diagnose, care for and treat physically ill persons. *See* TEX. HEALTH & SAFETY CODE ANN. § 571.003(7) (Vernon 1992).

4. A "mental hospital" is one operated primarily to provide inpatient care and treatment for persons with mental illness or one operated by a federal agency equipped to provide inpatient care and treatment for persons with mental illness. *See* TEX. HEALTH & SAFETY CODE ANN. § 571.003(13)(A)(B) (Vernon 1992).