Robert FAULK, M. R. Ferguson & Allen Lawless, Appellants,

v.

The STATE of Texas, Appellee.

No. 56402.

Court of Criminal Appeals of Texas, En Banc.

Oct. 22, 1980.

Rehearing Denied Dec. 10, 1980.

Joseph C. Hawthorn, Beaumont, for appellant.

James S. McGrath, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

Appeals are taken from convictions for riot. V.T.C.A.Penal Code, Sec. 42.02. After finding appellants Faulk and Ferguson guilty of riot by arson, the jury assessed punishment at five years for Faulk and three years for Ferguson. After finding appellant Lawless guilty of riot by criminal mischief, the jury assessed punishment at five years, probated.

In their second ground of error, appellants Faulk and Ferguson challenge the sufficiency of the evidence. Specifically, they maintain that the evidence is insufficient to prove that a fire was intentionally set. They further contend that the evidence is insufficient to prove that they set a fire or acted together in some manner with those who actually set a fire.

John Wallace testified that he was Finance Secretary for Carpenter's Local 610 in Port Arthur. Wallace stated that on the morning of January 17, 1975, he noticed approximately 500 people gathered on Highway 73 in Port Arthur. Wallace related that the purpose of the group was to protest substandard wages, bad working conditions, and "people from out of that area not working." These complaints were directed at officials of Cross Construction Company. The company had contracted to perform work at the Alligator Pump Station. The construction site was approximately three miles from the location where the protestors had gathered.

William McVay was the carpenter foreman for Cross Construction at the job site. McVay related that while working, he noticed three or four pickup trucks drive up to the job site. Approximately 50 men were riding in and on the trucks. McVay related that as soon as the trucks stopped, the men formed into several groups and began destroying property at the job site. McVay stated that the intruders were armed with two–by–four sections of lumber, pipes, bottles, and rocks. Several Cross employees were attacked and beaten by members of the group. McVay testified that all of the men appeared to be participating in the disturbance. As he left for the hospital, McVay saw approximately 20 men attempting to turn over a 30 foot trailer which was used as an office at the job site by Cross. McVay stated that there were no kerosene lamps or heating devices in the office.

A. A. Cross, President of Cross Construction Company, testified the office trailer at the job site was totally destroyed by fire. Cross stated that there was nothing of a combustible nature in the trailer. He testified that he observed members of the mob dousing gasoline on the trailer, but, but did not actually see the trailer set on fire. Cross stated that all of the men who departed from the pickup trucks were participating in the disturbance. Cross identified appellants Faulk and Ferguson as members of the group. He stated that Ferguson was armed with a section of lumber which had been fashioned into a club.

Paul Scott testified that he was a construction engineer for Cross Construction. He related that he was physically attacked by members of the group. Scott identified appellant Faulk as one of the individuals who invaded the job site.

Claude Leflett testified that he was a heavy equipment operator at the job site. Leflett stated that when he attempted to gain access to the job site via Highway 73, his truck was stopped by the protestors and he was told he would not be allowed to go to work. Leflett eventually gained access to the job site by another route. He stated that when he saw the men arrive in the pickup trucks, he attempted to leave. Before he could leave the site, Leflett was hit in the face by appellant Faulk and asked if he (Leflett) did not remember that he was told not to come to work that day.

Officer Thomas Treadway, of the Port Arthur Police Department, testified that he arrived at the job site after learning that a demonstration was being held to protest the use of "scab labor" by Cross. He related that when he arrived, the job site was destroyed and it looked as though "a battle had taken place." Treadway stated that a trailer at the site was burning.

█ In support of his contention that the evidence is insufficient to show that the fire was intentionally set, appellant relies on *Bussey v. State*, 474 S.W.2d 708 (Tex.Cr. App.). In that case, the Court found the evidence insufficient to support an arson conviction when no one saw the defendant start the fire and the State made no effort to negate the possibility that the fire started from some cause other than being designedly set. Likewise, in *Adrian v. State*, 587 S.W.2d 733 (Tex.Cr.App.), we found the evidence insufficient to support the arson conviction when apart from the defendant's confession, there was no evidence that the fire was intentionally set. Thus, the mere fact that a building is destroyed by fire does not show that the crime of arson was committed by anyone, in that there must be evidence that the fire was of an incendiary origin. *Zepeda v. State*, 139 Tex.Cr.R. 258, 139 S.W.2d 820.

In the instant case, McVay testified that there were no kerosene lamps or heating devices in the trailer. Cross related that although there were no combustible materials in the trailer, it was gutted by fire after he saw members of the mob dousing it with gasoline. We find the evidence sufficient to prove that the fire which destroyed the trailer was of an incendiary origin.

Appellants further contend that the evidence is insufficient to prove that they, or any member of the group, set the trailer on fire. Cross testified that the intruders arrived at the site shortly before 7:00 A.M. While the men were destroying the property, he saw gasoline being thrown onto the trailer. Officer Treadway testified that he arrived at the job site about 7:09 A.M. When he arrived, Treadway noticed that the trailer was on fire. Treadway stated that when he arrived at the job site, many of the men fled in their vehicles and others attempted to conceal their identity.

The State could discharge its burden by showing that anyone engaged in the riot set the trailer on fire. See, Sec. 42.02(f). In the absence of direct evidence that a participant was seen starting the fire, the State necessarily relied on circumstantial evidence.

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. *Schershel v. State*, 575 S.W.2d 548 (Tex.Cr.App.); *Bryant v. State*, 574 S.W.2d 109 (Tex.Cr.App.). Thus, proof which amounts only to a strong suspicion or mere probability is insufficient. *Ford v. State*, 571 S.W.2d 924 (Tex.Cr.App.). However, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State*, 575 S.W.2d 551 (Tex.Cr.App.).

In *Romo v. State*, 593 S.W.2d 690 (Tex.Cr.App.), the appellant challenged the sufficiency of the evidence to prove that he set a fire. This Court found the evidence suff·

cient to support the arson conviction. Although no one saw the defendant start a fire, it was shown that shortly after he entered his individual jail cell, a flaming wad of toilet paper was hurled from the cell into the hallway. Likewise, in *Miller v. State*, 566 S.W.2d 614 (Tex.Cr.App.), we found the evidence sufficient to prove that the defendant started a fire. In that case, the defendant was shown to have been present shortly before the fire was seen. He was trying to notify potential customers and his employees that the restaurant would be closed that day. He left the scene in a hurried manner and he tried to cover up his prior presence on the day of the fire.

In the instant case, the evidence established that members of the group that invaded Cross' job site, doused gasoline onto the trailer. Shortly thereafter, the trailer was seen burning. Members of the group hurriedly left the site when law enforcement officials arrived. We find the evidence sufficient to exclude every other reasonable hypothesis except that of a group member's guilt in intentionally setting the trailer on fire. Appellants' second ground of error is overruled.

In their fourth ground of error, appellants Faulk and Ferguson contend that the trial court erred in failing to submit their specially requested charge relative to the law of circumstantial evidence. They maintain that in the absence of direct evidence that a member of the invading group started a fire, such a charge was required.

A charge on circumstantial evidence is required only when the evidence of the main fact essential to guilt is purely and entirely circumstantial. *Ransonette v. State*, 550 S.W.2d 36 (Tex.Cr.App.). However, when the facts are in such close relationship to the main fact to be proved as to be the equivalent of direct testimony, a charge on circumstantial evidence is not required. *Newton v. State*, 509 S.W.2d 610 (Tex.Cr.App.); *Oltiveros v. State*, 474 S.W.2d 221 (Tex.Cr.App.).

In *Ales v. State*, 587 S.W.2d 686 (Tex.Cr.App.), we concluded that the facts proven were in such close relationship as to be the

equivalent of direct evidence of the main fact to be proved. In that case, no one saw the appellant inflict the injuries which brought about the death of his child. However, the appellant's wife testified that she was told to leave a room in order for the appellant to punish the child with a paddle. The next morning the witness observed that the child had severe head injuries. It was also proven that the paddle was broken on the night the child was punished.

Likewise in *Romo v. State*, supra, we found no error in the trial court refusing to submit a charge on circumstantial evidence. In that case, there was no direct evidence that appellant started a fire. He was observed entering his individual cell. Approximately 30 seconds later, a flaming wad of toilet paper was thrown from the cell. We concluded that the facts proven concerning the appellant's act in igniting one of the wads were in such close relationship as to be the equivalent of direct evidence.

■ In the instant case, the main fact to be proven was that appellants knowingly participated in a riot and while so participating, a member of the riotous group set the trailer afire in the furtherance of the purpose of the assembly. Appellant Ferguson was identified as a member of the group which invaded the job site. At the time Cross' property was being destroyed and employees physically attacked, Ferguson was armed with a club. Appellant Faulk was identified as having attacked one of Cross' employees. Cross related that other members of the group were attempting to turn over the trailer which was ultimately destroyed. Members of the group were observed dousing the trailer with gasoline. Shortly thereafter, Officer Treadway saw the trailer burning. There was no substance of a combustible nature in the trailer.

We conclude that the evidence concerning the group's acts in attempting to turn over the trailer, dousing it with gasoline, and it being observed on fire shortly thereafter, are in such close relationship as to be the equivalent of direct evidence that a group member set the trailer on fire. No error is

shown in the trial court's refusal to submit appellant's requested charge on circumstantial evidence.

■ In their fifth ground of error, appellants Faulk and Ferguson contend that the trial court erred in failing to submit their specially requested charge on the law of parties. They maintain "... the conduct of the appellants, Faulk and Ferguson, was not sufficient, in and of itself, to sustain the conviction of riot by arson, and therefore, a charge on the law of principals should have been given."

Appellants' requested charge on the law of parties was as follows:

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or both. Each party to an offense may be convicted of the offense.

"A person is criminally responsible for an offense committed by the conduct of another if he intentionally or knowingly solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

"Mere presence at the scene of an offense does not make a person a party."

In its charge to the jury, the court gave in instruction on a defense to the offense of riot in the following manner:

"It is a defense to this prosecution that the assembly, if any, was at first lawful and when one of those assembled manifested an intent to engage in conduct constituting a riot, a defendant retired from the assembly."

Sec. 42.02(f)(1) provides as follows:

"An offense under this section is an offense of the same classification as any offense of a higher grade committed by anyone engaged in the riot if the offense was:

"(1) in the furtherance of the purpose of the assembly;"

■ Under this statute, an accused's criminal responsibility for an offense com-

mitted by another participant in the riot, is much broader than under the law of parties as contained in V.T.C.A.Penal Code, Secs. 7.01 and 7.02. See, Searcy and Patterson, Practice Commentary, 4 Tex.Penal Code Ann. 143 (1974). The defendant may be punished for an offense committed in the furtherance of the assembly as long as he knowingly participates in the riot. The riot statute does not require that a defendant solicit, encourage, direct, aid, or attempt to aid another participant who commits an offense in the furtherance of the riot for whose conduct the defendant may ultimately be punished.

Appellants' requested charge on the law of parties was contrary to the provisions of Sec. 42.02(f)(1). We find no error in the trial court refusing to submit a charge contrary to the law under which appellants were being prosecuted.

■ In their first ground of error, appellants Faulk and Ferguson contend that Sec. 42.02 is unconstitutional. They maintain that the statute infringes upon the constitutional right to assembly as protected by Tex.Const., Art. I, Sec. 27 and the First Amendment of the United States Constitution. It is their contention that since the statute is susceptible of punishing conduct protected by the right to assemble, it is unconstitutional as being overly broad.

Sec. 42.02(a)(1) and (b) provide as follows:

"(a) For the purpose of this section, 'riot' means the assemblage of seven or more persons resulting in conduct which:

"(1) creates an immediate danger of damage to property or injury to persons;

" . . .

"(b) A person commits an offense if he knowingly participates in a riot."

■ It is the duty of this Court to construe statutes so that the legislative intent of enacting constitutional statutes will be carried out. *Ex Parte Groves*, 571 S.W.2d 888 (Tex.Cr.App.). Thus, when construing a statute, its subject matter, reason and effect must be looked to, and when literal enforcement would lead to consequences which the Legislature could not have contemplated, courts are bound to presume that such consequences were not intended and adopt a construction which will promote the purpose for which the legislation was passed. *Newsom v. State*, 372 S.W.2d 681 (Tex.Cr.App.).

On original submission, the statute was found to be constitutional after we construed the statute as written to require that "knowing participation" in a riot includes the requirement that the actor participate in the assemblage knowing that it is resulting in conduct creating an immediate danger of damage to property or injury to persons. This construction is consistent with Sec. 42.02(c) which provides a defense to the offense of riot in the following manner:

"It is a defense to prosecution under this section that the assembly was at first lawful and when one of those assembled manifested an intent to engage in conduct enumerated in Subsection (a) of this section, the actor retired from the assembly."

The thrust of appellants' attack on the statute as being overly broad is that it would apply to a person who participated in a lawful assembly which ultimately became unlawful, even though the person may not have participated in the assemblage with the intent that the unlawful result occur, may not have acted with those who did the unlawful act, or may not have contributed in any manner to the resulting unlawful conduct. In *Williams v. Osmundson*, 281 N.W.2d 622 (Iowa 1979) the defendant contended that Iowa's riot statute was overly broad in that it would apply to innocent persons involved in lawful assemblies which ultimately became unlawful. In finding the contention to be without merit, the Court noted that the statute does not punish one who is merely present at the scene of a riot, but rather, requires some form of participation in the riot by the defendant. Likewise, in *State v. Bad Heart Bull*, 257 N.W.2d 715 (S.D.1977), the defendant maintained that the state riot statute violated her constitutional right to freedom of as-

sembly. The Court found that the grava-men of the crime of riot in South Dakota is violence or the immediate threat thereof, thus, the riot statute prohibits certain forms of conduct rather than forms of expression. The Court upheld the constitutionality of the statute after noting the statute did not attempt to regulate the right to assembly in that that right ends when violence begins. Other states have upheld their riot statutes after noting that an assemblage does not become a riot and thus criminal unless violence which poses a clear and present danger to persons or property is present. See, *State v. Brooks*, 215 S.E.2d 111 (N.C.1975); *State v. Douglas*, 278 So.2d 485 (La.1973); *State v. Orange*, 478 P.2d 220 (Wash.1970).

Our riot statute does not attempt to proscribe mere participation in a lawful assembly. The statute provides a defense to one who participates in a lawful assembly which ultimately becomes unlawful, if he retires from the assembly when one of those assembled manifests an intent to engage in unlawful conduct. The statute controls forms of unlawful conduct rather than forms of lawful expression. Lastly, as construed on original submission, the statute requires that the actor participate with those assembled knowing that the assemblage is resulting in unlawful conduct. We find the statute as written and construed to be constitutional.

On original submission, after construing the riot statute to include the element that the defendant participated in the assembly knowing that it is resulting in conduct creating an immediate danger of damage to property or injury to persons, we found the court's charge to the jury to be fundamentally defective for failing to include this element. In its motion for rehearing, the State contends that the opinion on original submission is erroneous. The State maintains that the result of the opinion is "strange" in that the riot statute as enacted is constitutional and that the indictment and charge to the jury tract the language of the statute; nevertheless, the charge was found to be defective. The State argues that if the charge to the jury was erroneous

for omission of an element of the offense, then the indictment is defective for the same reason.

■ ▪The cardinal rule of statutory interpretation is to ascertain the legislative intent in enacting a statute. *Minton v. Frank*, 545 S.W.2d 442 (Tex.1976). Such intent and a determination of the meaning of a statute is to be based upon the language of the statute itself. *Jones v. Del Andersen*, 539 S.W.2d 348 (Tex.1976).

■ As noted above, one does not commit the offense of riot by merely participating in an otherwise lawful assembly. The statute requires knowing participation in an assemblage which is creating an immediate danger of damage to property or injury to persons. Thus, the resulting conduct of the assemblage and participation by the party in that assemblage knowing of its conduct makes one subject to criminal sanctions. We find that "knowing participation" in an assemblage under the statute includes the requirement that the defendant know that the conduct of the assemblage is resulting in unlawful activity. Therefore, to the extent that the original opinion found that this was an element of the offense in addition to the statute as written, it was in error. The element of the offense as found by this Court in construing the statute is not in addition to the elements of the offense under the statute, but rather, based upon the language used by the Legislature in the statute itself.

In the instant case, the court charged the jury as follows with regard to appellant Faulk (identical as to Ferguson):

"Now therefore, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas on or about January 17, 1975, the defendant, ROBERT WAYNE FAULK, did then and there *knowingly participate in an assembly of more than seven persons*, the names and identities of those not named in this indictment being unknown to the Grand Jurors, *and that while so assembled and acting together, created an immediate danger of damage to property or*

*injury to persons* and did then and there commit the substantive offense of Arson by burning the building of A. A. CROSS, there situated, such act of burning being in furtherance of the purpose of the assembly or that the offense of Arson should have been anticipated by the defendant, ROBERT WAYNE FAULK, as a result of the assembly, you should find the defendant, ROBERT WAYNE FAULK, Guilty of the offense of Riot by Arson as alleged in count 1 of this indictment." (Emphasis Added.)

The charge clearly required the jury to find knowing participation in the assemblage by appellant. The charge further provided that the jury must find that appellant acted with those so assembled in creating an immediate danger of damage to property or injury to persons. The jury having been required to find that appellant participated in the creation of the danger, was sufficient to likewise require the jury to find that appellant knew of the resulting conduct of the assemblage.

We find that the court's charge required the jury to find all of the essential elements of the offense as it is defined by the Legislature and construed by this Court. Appellants have not challenged the portion of the charge applying the law to the facts in this appeal. We perceive no fundamental error in the charge.

■ On original submission appellant Lawless' conviction was reversed after the Court noted fundamental error in the jury charge. We concluded that the charge was defective in that it failed to require the jury to find beyond a reasonable doubt that appellant "knowingly" participated in the riot. Such knowing participation is an essential element of the offense. See, Sec. 42.02(b), supra.

In its motion for rehearing, the State maintains that the charge is not defective when it is considered along with other portions of the charge and the jury arguments. In its general instructions to the jury, the trial court stated, "A person commits the offense of Riot if he knowingly participates in a Riot." The court then went on to define the terms "riot" and "knowingly."

In *West v. State,* 567 S.W.2d 515 (Tex.Cr. App.), the Court found a jury charge in a criminal trespass prosecution to be fundamentally defective for failure to allege a culpable mental state. In that case, the Court noted:

" . . . the fundamental error in the charge occurred by submission of means of committing the offense not alleged in the indictment. Logic suggests that failure of the charge to require the jury to find all elements of the offense alleged would be equally defective, because such a charge would likewise fail to 'conform to the charges contained in the indictment.' *Windham v. State,* 530 S.W.2d 111 [Tex.Cr.App.], was such a case and the charge there was held fundamentally defective. The court there wrote:

'The charge which authorized the jury to find the appellant guilty of aggravated assault omitted one of the essential elements of the offense.'

"The indictment here properly alleged the culpable mental state element of the offense; the charge to the jury, however, omitted this element of the offense. See the charge and indictment set out above. Failure to include in the jury charge all essential elements of the offense as alleged in the indictment constitutes fundamental error under the authorities cited and quoted above." *West v. State,* supra at 517.

In the instant case, the defect in the charge was to authorize a conviction without requiring the jury to find all of the essential elements of the offense. Thus, the jury was allowed to convict appellant for conduct which did not constitute an offense under our Penal Code. Such a jury charge is defective and a conviction obtained pursuant thereto cannot stand. See, *Holloway v. State,* 583 S.W.2d 376 (Tex.Cr. App.); *Cumbie v. State,* 578 S.W.2d 732; *Mendoza v. State,* 577 S.W.2d 240 (Tex.Cr. App.).

The State's Motion for Rehearing as to appellants Faulk and Ferguson is granted

and the judgments are affirmed. The State's Motion for Rehearing as to appellant Lawless is denied.

CLINTON, Judge, dissenting.

The constitutional right of assembly, Article I, Section 27, Bill of Rights, is not limited to seeking governmental redress of grievances, and may not be unduly curtailed by state statute. *De Jonge v. Oregon*, 299 U.S. 353, 364–365, 57 S.Ct. 255, 260, 81 L.Ed. 278 (1937). V.T.C.A.Penal Code, § 42.02 creates the same "chilling effect" on assemblage that an overbroad statute does to exercise of right to free speech, *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). While assembling may be quite validly regulated where its participants harbor a forbidden intent, *Lichten v. State*, 434 S.W.2d 128, 130–131 (Tex.Cr.App.1968), appeal dismissed 393 U.S. 86, 89 S.Ct. 259, 21 L.Ed.2d 218 (1968), or congregate in excessive numbers, *Geissler v. Coussoulis*, 424 S.W.2d 709, 712–713 (Tex.Civ.App.–San Antonio, writ ref'd n. r. e.), the spectre of harsh punishment of a citizen for the wrongful conduct of another in his company is a deterrent to gathering together that this Court, in my view, does not alleviate. I agree with Searcy and Patterson, Practice Commentary, 4 V.T.C.A., Penal Code 143:

> "Subsection (f), a shocking extension of vicarious criminal responsibility, is the worst defect of this section. It goes far beyond anything in the prior law and comes close to imposing strict liability on rioters. Subsection (f) is formulated as a theory of complicity–note the presence of Subsection (d), which was copied from Section 7.03–but even the doctrine of vicarious responsibility of coconspirators, codified in Section 7.02(b), requires that the unintended offense be both in furtherance of the conspiracy *and* a natural and probable consequence of its consummation. Subsection (f) represents a substantial setback in the effort to require personal culpability as a condition to the imposition of criminal responsibility." [Emphasis in original]

Accordingly, I dissent.

ONION, P. J., and ROBERTS, J., join.

PHILLIPS, Judge, dissenting.

The majority concludes that " 'knowing participation' in an assemblage under the statute includes the requirement that the defendant know that the conduct of the assemblage is resulting in unlawful activity." It then holds that charging the jury in the language of the statute, i. e. solely in terms of a "knowing participation," is sufficient to convey this requirement. I cannot agree.

The very problem with this statute is that it is subject to being read overbroadly. We all agree that the statute's scope must be limited. Further, most of us agree on the interpretation that saves the statute. Having reached this point, however, the majority falters, and fails to require that the jury be charged in accordance with the restricted interpretation of the statute. Instead, the majority holds that it is sufficient to instruct the jury in the facially overbroad language of the statute.

Members of juries are going to have the same problem interpreting the statute as we have had. They, like us, will be prone to read the statute too broadly. If they do, a defendant may well be convicted for participating in a lawful assembly that later degenerates, without the continued participation of the defendant, into a riotous assembly. It does no good whatsoever to interpret the statute strictly if we are not going to require the trial court to apply the strict interpretation. The defendant may prevail on appeal, but we will have been denied his opportunity to win at the trial level, where the battle is supposed to be fought.

In order to apply the statute in a valid manner, the trial court must not authorize the jury to convict a defendant if it finds only that the defendant "knowingly" participated in the assembly. The court must go further and require the jury to find that

the defendant participated in the assembly *knowing that it is resulting in conduct creating an immediate danger of damage to property or injury to persons.* The prudent trial judge will charge the jury in this manner.[1]

The majority today refuses to require the trial court to do its duty, and sanctions the submission of a jury instruction that does not properly state the law. I dissent to the majority's action.

---

1. The prudent judge will also grant motions to quash indictments that fail to allege the offense in terms that comport with our restrictive interpretation of the statute. See *Haecker v. State*, 571 S.W.2d 920 (Tex.Crim.App.1978).