No. 04-97-01058-CR



Juan GAMEZ, 


Appellant



v.



The STATE of Texas,


Appellee



From the 229th Judicial District Court, Duval County, Texas


Trial Court No. 5889


Honorable Ricardo H. Garcia, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Karen Angelini, Justice


Delivered and Filed: October 28, 1998


AFFIRMED


Nature of the case 

 A jury found Juan Gamez guilty of the second degree felony offense of arson. Due to a prior
felony conviction, Gamez's punishment was enhanced to that of a first degree felony and the court
assessed punishment at twenty years confinement. In his appeal, Gamez raises ten issues. In his first
issue, Gamez contends that the court erred in not granting his oral motion for continuance made prior
to trial. In his second issue, Gamez alleges that the evidence does not prove beyond a reasonable
doubt that Leandro Rea was the owner of the trailer as set out in the indictment. Gamez argues in
his third issue that the evidence does not prove beyond a reasonable doubt that the object that burned
was a habitation as set out in the indictment. In his fourth issue, Gamez alleges that the evidence
does not prove beyond a reasonable doubt that the fire was incendiary in nature. Gamez argues in
his fifth issue that the court erred in admitting expert testimony concerning causation from an expert
not qualified in the field of causation. In his sixth issue, Gamez alleges that the State suborned
perjury and tainted the evidence so as to cause the jury to render an unfair verdict. In his seventh
and eighth issues, Gamez argues that the court erred by allowing a surprise witness, a jailer, to testify
at trial about an alleged oral statement made by Gamez while in custody. In his ninth and tenth
issues, Gamez alleges that prosecutorial misconduct caused an unfair trial and his due process rights
were violated.

Factual background


 Gamez was found guilty of intentionally and knowingly starting a fire with the intent to
destroy or damage a habitation belonging to Leandro Rea and without the consent of Rea. The
evidence showed that the habitation in question was a trailer which had been given to Rea by his son.
Rea testified that Gamez owned the land the trailer was on and he paid Gamez $100 a month for the
use of the land. Michelle Rodriguez, a neighbor, was an alleged eyewitness to the crime. Rodriguez
testified that shortly before the fire, she saw Gamez taking things out of the trailer and putting them
in his truck. According to Rodriguez, she then saw Gamez pour some gasoline and light a match.
Dean Shirley, a deputy state fire marshall, testified that the fire was not accidental and that the burn
patterns indicated the possibility of a flammable liquid. Michelle Rodriguez was the only witness
who testified that she saw Gamez start the fire; however Anita Rodriguez, Gamez's girlfriend, also
testified that she saw Gamez taking things out of the trailer and putting them in his truck.

First Issue


 In his first issue, Gamez argues that the court erred in not granting his oral motion for
continuance. We review a trial court's decision to deny a motion for continuance under an abuse
of discretion standard. See Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). On
the day of trial just before beginning voir dire, the State told the court that an investigation was
ongoing concerning an allegation that Gamez had approached Jonas Rodriguez, a witness, and told
him to change his story.(1) Defense counsel withdrew his announcement of ready and asked for a
continuance claiming surprise because the State failed to provide him with a copy of Jonas's
statement that Gamez had told Jonas to change his story. We note that the State did not act in bad
faith for two reasons. First, Jonas was not a surprise witness as he had already been listed as a
witness for the State. Secondly, the State did not receive information about Gamez approaching
Jonas until the day of trial. Thus, the allegations were a surprise to the State and to the defense. The
court denied the motion stating that a continuance would not be granted because Gamez had
allegedly caused the problem and thus could not take advantage of his own wrongdoing. The court
did not allow the State to mention the incident during voir dire. The State began its case the
following day.

 Defense counsel contends, without citation to authority, that it is the attorney's surprise and
not the defendant's that is at issue because defense counsel must prepare a defense. Although the
statement might have been a surprise to defense counsel, we cannot overlook the fact that Gamez
created the problem by telling Jonas to change his story. Thus, there was no surprise to Gamez. We
also note that defense counsel had access to his client to question him about the alleged wrongdoing
and to prepare a defense. Based on these facts, we cannot say that the court abused its discretion by
denying Gamez's oral motion for continuance. We overrule Gamez's first issue.

Second Issue

 In his second issue, Gamez alleges that the State failed to prove beyond a reasonable doubt
that the trailer was owned by Leandro Rea and thus a variance existed between an element in the
indictment and the evidence introduced at trial. Rea testified that his son, Jose Luis Rea, had given
him the trailer. Gamez points out that during cross-examination, Rea testified that he had told others
that the trailer belonged to Jose Luis. The Penal Code defines owner as a "person who has title to
the property, possession of the property, whether lawful or not, or a greater right to possession of the
property than the actor." Tex. Pen. Code Ann. § 1.07(35)(A) (Vernon 1994). While the State
presented no evidence of legal title, the State proved that Rea possessed the trailer. Rea testified that
he spent the night in the trailer and had personal items there. Neighbors testified that Rea lived in
the trailer. In reviewing the evidence in the light most favorable to the verdict, we find that a rational
trier of fact could have found that Rea owned the trailer beyond a reasonable doubt. See Jackson v.
Virginia, 443 U. S. 307, 318-19 (1979). We overrule the second issue.

Third Issue

 In his third issue, Gamez alleges that the State failed to prove beyond a reasonable doubt that
the trailer was a habitation as set out in the indictment. Habitation means "a structure or vehicle that
is adapted for the overnight accommodation of persons." Tex. Pen. Code Ann. § 28.01(1) (Vernon
1994). The determination of the suitability of a structure for habitation is a fact question for the jury.
See Blankenship v. State, 780 S.W.2d 198, 209 (Tex. Crim. App. 1988). Factors to consider include
whether the structure contained bedding, furniture, utilities or other belongings common to a
residential structure, and whether the structure is of such a character that it was probably intended
to accommodate persons overnight such as a trailer. Id. Rea testified that he sometimes slept in the
trailer and that he had clothes, food, tools, and plates inside the trailer. Gamez points to testimony
which showed that the trailer had no connections for electricity, water, sewer, or other utilities to
support his assertion that the trailer was not a habitation. However, viewing the evidence in the light
most favorable to the verdict, we find that a rational jury could have found, beyond a reasonable
doubt, that the trailer was a habitation. See Jackson, 443 U. S. at 318-19.(2) We overrule Gamez's
third issue.

Fourth and Fifth Issues

 In his fourth point of error, Gamez contends that the evidence failed to prove beyond a
reasonable doubt that the fire was incendiary in nature. Gamez argues in his fifth point of error that
the court erred in admitting testimony concerning causation from a person not qualified as an expert
in the field of causation. Gamez alleges that the State failed to meet the requirements of Rule 702
of the Texas Rules of Criminal Evidence. Rule 702 states: "If scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact
in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may
testify thereto in the form of an opinion or otherwise." Tex. R. Crim. Evid. 702. Gamez argues that
Dean Shirley was not qualified to testify to causation and thus the State failed to provide reliable
scientific evidence that the fire was incendiary in nature.

 The State offered the testimony of Dean Shirley, a deputy state fire marshall with the State
Fire Marshall's Office, who conducted an investigation of the fire that damaged the trailer. Shirley
testified that he had been involved in fire fighting since 1975 and had been a firefighter in the U.S.
Air Force and then a firefighter at an airport. Shirley testified that he had been certified as a fire and
arson investigator for two years and had completed a 98 hour course in detection and cause and
origin of fires to receive his certification from the Texas Commission on Fire Protection.

 Shirley testified about the origin of the fire and the burn patterns. Shirley also testified that
he determined that the fire was not accidental. After the State asked Shirley about whether any
accelerants were used, defense counsel asked to take the witness on voir dire outside the presence
of the jury. On voir dire, Shirley testified that he did not have a college degree in chemistry or
physics. Shirley testified that he had not performed any laboratory tests to determine the chemical
make-up of accelerants. However, Shirley testified that he was trained in the observations of burn
patterns in a fire scene that indicate the presence of a flammable liquid. Defense counsel objected
to Shirley's qualifications to testify about the type of accelerant used in the fire. However, Shirley
did not testify about the type of accelerant used in the fire but testified that the burn patterns on the
floor indicated the possibility that a flammable liquid had been used.

 We find that Shirley, based on his experience and training, was qualified to testify that the
fire was not accidental and that the burn patterns indicated the possibility that a flammable liquid
had been used. We acknowledge that Shirley had no experience in determining the chemical make-up of accelerants that might have been used to accelerate the fire. However, he did not testify about
the type of accelerant, such as gasoline or kerosene, used to set the fire. Thus, the court did not err
in admitting Shirley's testimony.

 Gamez further contends that the mere fact that a building is destroyed by fire does not show
that a fire was incendiary in nature unless credible and reliable evidence of incendiary origin is
shown. See Faulk v. State, 608 S.W.2d 625, 627 (Tex. Crim. App. 1980). In this case, Shirley does
much more than merely state that the fire was incendiary. Shirley testified that, based on his
observation of the fire travel paths and burn patterns inside the trailer, the fire was an intentional act
and that there was a possibility that a flammable liquid was used to accelerate the fire. Shirley
further testified that he found no evidence to contradict his opinion that an accelerant was used in
the fire. Viewing the evidence in the light most favorable to the verdict, we find that the State
proved beyond a reasonable doubt that the fire was incendiary in nature. We overrule Gamez's
fourth and fifth issues.

Sixth Issue

 In his sixth issue, Gamez alleges that the State suborned perjury and thus the evidence was
tainted and caused the jury to render an unfair verdict. Gamez points to the testimony of the State's
eyewitness, Michelle Rodriguez, as support for his allegations of perjury. Gamez alleges that
Rodriguez testified falsely when she stated that she saw Gamez start the fire outside the trailer
because Shirley testified that the origin of the fire was inside the trailer. Gamez contends that other
witnesses refuted Rodriguez's testimony that she was at the scene of the fire when it started.
Rodriguez testified that her brother-in-law, Jonas, saw the fire start as he was walking home from
the park, but Jonas testified that he had been at the park that night but had not seen the fire start.
None of the other witnesses testified that they were outside at the time the fire started. Velma Soliz,
a neighbor, testified that when she went outside after the trailer was on fire, she saw Michelle
Rodriguez coming from her house which was behind her mother-in law's house. Gamez contends
that this testimony shows that Rodriguez was not outside when the fire started. Rodriguez testified
that after the fire started, she went back to her house to get her shoes. Gamez also points to
inconsistencies in Rodriguez's statements to the fire marshall and police and her testimony at trial.
 The jury is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The jury could choose
to believe or not believe the witnesses, or any portion of their testimony. Sharp v. State, 707 S.W.2d
611, 614 (Tex. Crim. App. 1986) (citing Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App.
1974)). Further, a witness may be believed even though some of his testimony may be contradicted.
See id. (citing Jackson v. State, 505 S.W.2d 916, 918 (Tex. Crim. App. 1974)). Having reviewed
the record, we do not come to the conclusion that any inconsistencies in Rodriguez's testimony
constituted perjury that tainted the jury's verdict.

 Further, Gamez alleges that the State told Rodriguez to change her sworn testimony. On the
first day of trial, Rodriguez testified that she was not afraid of Gamez. While testifying on the
second day of trial, Rodriguez testified that she was afraid of Gamez and upon cross-examination
stated that the district attorney had told her to testify that she was scared. At this point, the court
held a hearing inside chambers. At the hearing, the district attorney stated that he did not tell
Rodriguez what to say on the stand. According to the district attorney, Rodriguez told him that she
was scared after seeing Gamez and his girlfriend, Anita, in the hallway. The district attorney told
her that if she was scared, she should testify that she was scared. Rodriguez testified in the hearing
that she told the district attorney that she was scared and he then told her that she should testify that
she was scared. Based on the testimony at the hearing, we do not find that the State suborned
perjury. We overrule Gamez's sixth issue.

Seventh Issue

 In his seventh issue, Gamez contends that the court erred in allowing Deputy Sheriff Larry
Dubose to testify at trial in violation of the pre-trial orders and the Code of Criminal Procedure.
Dubose testified that he overheard Gamez telling other inmates that it "was his place and he could
burn it if he wanted to and no one could do anything about it in Duval County." Dubose also
testified that Gamez told him that maybe he should plead out because he wanted to get out of jail.

 Prior to Dubose's testimony, defense counsel objected based on surprise and also on the basis
that Dubose was not listed on the State's witness list. The State countered that Dubose only
informed the district attorney of Gamez's statement the day before and because Dubose was a
rebuttal witness there was no requirement that he be included on the witness list. The State further
argued that Dubose's testimony was offered to rebut the testimony of Anita and Jonas Rodriguez
who testified that Gamez was not outside when the fire began.

 We review a court's decision to allow a witness, who is not on the witness list, to testify
under an abuse of discretion standard. Stoker v. State, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989).
Factors to consider include whether the prosecutor acted in bad faith in failing to disclose the witness
and whether the defendant can reasonably anticipate that a witness will testify even though the name
is not on the list. Id. Gamez has not shown bad faith on the part of the prosecutor because the
prosecutor testified that he only learned of the testimony on the day of trial. See Doherty v. State,
892 S.W.2d 13, 18 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd) (finding that bad faith not
shown where prosecutor did not know existence of witness until the night before). According to the
prosecutor, Dubose reported to his office to testify in another trial. While in the prosecutor's office,
Dubose asked the prosecutor which case was being tried and when the prosecutor said "Juan
Gamez," Dubose relayed the statements that he had heard. Dubose was a surprise witness for both
sides. Further, the ability of a defendant to reasonably anticipate that a witness will testify is merely
a factor to consider and not determinative. Id. We find that the court did not abuse its discretion in
allowing Deputy Dubose to testify as a rebuttal witness. We overrule Gamez's seventh issue.

Eighth Issue

 In his eighth issue, Gamez alleges that the court erred in allowing Dubose to testify about an
alleged oral statement made by Gamez while he was in custody. Gamez argues that his statements
are inadmissible under article 38.22 of the Code of Criminal Procedure. Article 38.22 applies to
written or oral statements made by an accused as the result of custodial interrogation. Custodial
interrogation is defined as "questioning initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda
v. Arizona, 384 U. S. 436, 444 (1966). At the time Gamez made his statements, he was not being
questioned by law enforcement; thus, the statements were not a result of custodial interrogation.

 Gamez further contends that Dubose's testimony was improper impeachment. The State
called Dubose as a rebuttal witness. On rebuttal, the State can offer any evidence that tends to rebut
the defensive theory and evidence introduced to support that theory. See Yohey v. State, 801 S.W.2d
232, 236 (Tex. App.--San Antonio 1990, pet. ref'd). Gamez argues that he did not testify and thus
Dubose's testimony does not rebut any evidence. In fact, the only defense witness was Ruth Ann
Rodriguez, Anita's twelve year-old daughter. Gamez's defensive theory was to impeach the
testimony of the State's eyewitness, Michelle Rodriguez. Ruth Ann's testimony contradicted
Michelle's testimony that she had been at Anita's house earlier in the evening on the night of the fire.
However, Ruth Ann testified that she was asleep when the fire started and did not know whether
Michelle was outside to see Gamez start the fire. Defense counsel also cross-examined Michelle
about other persons in the neighborhood who had set houses on fire thereby trying to imply that
someone other than Gamez had started the fire. The State argues that Dubose's testimony was
offered to rebut the testimony of Anita and Jonas Rodriguez. Jonas testified that right before the fire
he saw Gamez at his uncle's house. Thus, the testimony of Deputy Dubose tends to rebut the
defense's theory that Michelle was lying and that someone else started the fire.

 Gamez further contends that the testimony of Dubose was unreliable and should not have
been admitted into evidence. Defense counsel points to the following cross-examination testimony
concerning the time of year Gamez made the statements:

 [Defense counsel]: All right. And uh, did you hear this back in uh, in
November of last year?


 [Dubose]: I can't recall what month or day it was, but it was back
some time then.


 [Defense counsel]: Well, did you -- well, it's important because we
need to know exactly when you discovered that, you found this out.
Did you find this out in November?


 [Dubose]: It's hard to say because it's been a while back.


 [Defense counsel]: Did you find out in December?


 [Dubose]: It was around [the] latter part of the year I know that. I just --


Defense counsel then offered into evidence jail records showing the names of the inmates
incarcerated during the months of November and December and Gamez's name did not appear in
the records. Defense counsel then showed Dubose a document that showed that Gamez was brought
to the jail on February 24, 1997. Dubose then testified that he might be mistaken about the date but
not about what Gamez said. Defense counsel properly impeached Dubose about the time of year the
alleged statements were made. However, we do not find that Dubose's testimony was completely
unreliable. Further, the jury is the sole judge of the credibility of the witnesses and the weight to be
given their testimony. Santellan, 939 S.W.2d at 164. The court did not err in allowing Dubose to
testify about statements made by Gamez while in custody. We overrule his eighth issue.


Ninth and Tenth Issues

 In his ninth and tenth issue, Gamez alleges that prosecutorial misconduct caused an unfair
trial and violated his right to due process. Gamez reasserts his argument that the State engaged in
misconduct by putting witnesses on the stand who committed perjury. However, we have rejected
these contentions and therefore we do not find that prosecutorial misconduct caused an unfair trial
or that Gamez's due process rights were violated. We overrule his ninth and tenth issues.

 We affirm the judgment.


 Karen Angelini, Justice

DO NOT PUBLISH

1. Jonas Rodriguez was the son of Gamez's girlfriend. Jonas had made a statement to police that after the fire
he saw Gamez at his uncle's house and that Gamez had put a red container which looked like a gasoline container in
the back of his truck. At trial, the State's allegation that Gamez had told Jonas not to tell about the gasoline and the
truck was proven as Jonas testified to that effect.
2. We note that the second degree felony offense of arson does not differentiate between a habitation or a
building as in the offense of burglary. It is arson if a person starts a fire with intent to destroy or damage any building,
habitation, or vehicle. Tex. Pen. Code Ann. § 28.02(a)(2) (Vernon 1994).


Return to
4th Court of Appeals Opinions