

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-75,933

### EX PARTE FRANK GARCIA HERNANDEZ, JR., Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS IN CAUSE NO. 22048-02-A IN THE 47TH DISTRICT COURT POTTER COUNTY

**JOHNSON, J., filed a dissenting opinion in which PRICE, J., joined.**

### DISSENTING OPINION

The bone of contention in this case is the meaning of "is serving a sentence for."[1] The majority holds that the phrase includes the sentence for a new conviction that occurred after release on parole or mandatory supervision and before revocation of that release. Indeed, the offense on which the new conviction is based is frequently the reason for the revocation. I would hold that the phrase refers only to the sentence on which the applicant is seeking street-time credit.

In 2005, we decided *Ex parte Keller*, 173 S.W.3d 492 (Tex. Crim. App. 2005). In that case,

---

[1] There is no dispute that the ineligible offense is not a "previous conviction."

Keller sought street-time credit on a 1992 burglary conviction. In 1993, while on parole on that sentence, he committed indecency with a child, but he was not convicted of that offense until 1997. His sentence of two years' imprisonment on that charge had already been fully served at the time of sentencing. We held that, when Keller's release on the burglary charge was revoked in 2004, "he was not serving a sentence for" one of the offenses listed in TEX. GOV'T CODE § 508.149(a)–the sentence for the listed offense was fully discharged–and that the offense that was listed, indecency with a child, was not a "previous" one, as it had been committed after the date of the burglary sentencing.[2]

According to our holding in *Boykin v, State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991),

When we interpret statutes . . ., we seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation. *Camacho v. State*, 765 S.W.2d 431 (Tex.Cr.App 1989). . . .

When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. . . . There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment. . . .

Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Smith v. State*, 789 S.W.2d 590, 592 (Tex.Cr.App. 1990). "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Coit v. State*, 808 S.W.2d 473, 475 (Tex.Cr.App. 1991)(quoting *Ex parte Davis*, 412 S.W.2d 46, 52 (Tex.Cr.App.

---

[2] In a 2007 *per curiam* order, *Ex parte Foster*, WR-36,343-02 & -03 (Tex. Crim. App. May 9, 2007)(*per curiam*)(not designated for publication), the Court considered a case very similar to the instant case and reached the same conclusion, but this Court has stated many times that unpublished cases, such as *Ex parte Foster*, lack precedential value and thus it cannot be relied upon as the basis for today's ruling. *See, e.g. Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008); *Ex parte Hood*, 211 S.W.3d 767 (Tex. Crim. App. 2007).

1967)).

> There is, of course, a legitimate exception to this plain meaning rule: "where application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally." *Faulk v. State*, 608 S.W.2d 625, 630 (Tex.Cr.App. 1980). When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way.

*Id.* We noted in a footnote that "the canons of construction are no more than rules of logic for the interpretation of texts." *Id*. at n.3.

The statute disallows street-time credit "if the inmate is serving a sentence for or has been previously convicted of" one of the offenses listed in section 508.149. Clearly, the legislature desired to award non-custodial time credit only to parolees who, *when released on mandatory supervision*, have convictions for only non-violent offenses. In this context, "has been previously convicted of" is clear and unambiguous: at some time before the inmate committed the offense for which he is currently incarcerated, he was convicted of one of the listed offenses. On the other hand, "is serving a sentence for" is susceptible to at least two interpretations, and it seems to me to apply only to the sentence on which the inmate is seeking street-time credit. To interpret it otherwise allows, even encourages, the Board of Pardons and Paroles (the Board) to engage in inappropriate gamesmanship–delay revocation of supervision for a unlisted offense that meets the midpoint requirement of § 508.283(c) until there is a new conviction on a listed offense, then deny street-time credit because the inmate "is serving a sentence for" a listed offense.

> In *Morrissey v. Brewer*, 408 U.S. 471, 475 (1972), the Supreme Court held that due process requires that a preliminary hearing be held "as promptly as convenient" after a parolee has been arrested to "determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed the acts that would constitute a violation of parole conditions.*"*

*Ex parte Cordova*, 235 S.W.2d 735, 735 (Tex. Crim. App. 2007).

TEX. GOV'T CODE § 508.281(a) states that

> [a] releasee . . . is entitled to a hearing before a parole panel . . . within a period that permits a parole panel . . . to dispose of the charges withe the periods established by Sections 508.282(a) and (b) if the releasee . . . (1) is accused of a violation of the releasee's parole or mandatory supervision . . . on information and complaint by a peace officer or parole officer.

TEX. GOV'T CODE § 508.2811, states that

> [a] parole panel . . . shall provide within a reasonable time to an inmate or person described by Section 508.281(a) a preliminary hearing to determine whether probable cause or reasonable grounds exist to believe that the inmate or person has committed an act that would constitute a violation of a condition of release, unless the inmate or person:
>> (1) waives the preliminary hearing; or
>> (2) after release:
>>> (A) has been charged only with an administrative violation of a condition of release; or
>>> (B) has been adjudicated guilty of or has pleaded guilty or nolo contendere to an offense committed after release, other than an offense punishable by fine only involving the operation of a motor vehicle, regardless of whether the court has deferred disposition of the case, imposed a sentence in the case, or placed the inmate or person on community supervision.

In this case, applicant was not "a person described by Section 508.149(a)" when he was released on mandatory supervision for unauthorized use of a motor vehicle. He served three years, ten and one-half months, then was released on mandatory supervision. Seventeen years and six months later, he was arrested for robbery, a listed offense. In August 2004, when appellant was arrested on the revocation warrant that alleged commission of the robbery, he was still not "a person described by Section 508.149," although charged with a listed offense. If the Board had acted on that revocation motion by holding a hearing "as promptly as convenient" or even within 120 days, applicant would still not have been "a person described by Section 508.149(a)" and would have received street-time credit. The Board, however, waited almost 150 days–until the new charge had resulted in a conviction for a listed

offense and a new sentence of five years–then revoked applicant and denied him street-time credit on the revoked mandatory supervision on the basis that he was, at the time of revocation, "a person described by Section 508.149(a)," an inmate who "is serving a sentence for" a listed offense.

This strikes me as gamesmanship, and perhaps, a violation of the spirit of § 508.283, in which the calculation of the time remaining on the sentence in which street-time credit is sought is based on the date on which the revocation warrant was issued, not when the alleged violation is found to be true. In this case, the Board's position–that "eligibility for street-time credit should depend strictly upon whether the person is one 'described by Section 508.149(a)' at the time they are revoked,"[3] rather than on the inmate's status on the date on which the revocation warrant issued–also has a financial impact on the state. If applicant had been granted the street-time that I interpret the statute to grant, the 1983 sentence would have been discharged in 2008, and when the sentence for the robbery discharges in August 2009, he would be released. Instead, when the robbery sentence expires, applicant will be confined, at public expense, for an additional 16 years, on an unlisted offense.

I would interpret the statute as directing us to look to only the sentence on which time credit is sought and ask if that sentence is for a listed offense or if the inmate has a conviction for a listed offense that predates the sentence on which street-time credit is sought. If the answer to each inquiry is no, then the inmate is not a person who is "serving as sentence for or has been previously convicted of" a listed offense nor "a person described by Section 508.149(a)," thus § 508.283(c) applies. Because the Court does not interpret the statute in that way, I respectfully dissent.

Filed: January 28, 2009
Publish

---

[3] Ex parte Keller, 173 S.W.3d 492, 497 (Tex. Crim. App. 2005).