Sarah CARR, et al., Appellees

v.

DISTRICT OF COLUMBIA, Appellant.

No. 08–7083.

United States Court of Appeals,
District of Columbia Circuit.

March 11, 2010.

Susan Beth Dunham, Daniel M. Schember, Gaffney & Schember, Frederick V. Mulhauser, Arthur Barry Spitzer, American Civil Liberties Union of the National Capital Area, Washington, DC, for Appellees.

Stacy Anderson, Adonna M. Murasky, Esquire, Todd Sunhwae Kim, Peter J. Nickles, Office of the Attorney General for the District of Columbia Office of the Solicitor General, Washington, DC, for Appellant.

Before SENTELLE, Chief Judge, GRIFFITH,* Circuit Judge, and Silberman,** Senior Circuit Judge.

## ORDER

PER CURIAM.

Upon consideration of appellees' petition for panel rehearing filed on December 21, 2009, it is

ORDERED that the petition be denied.

SILBERMAN, Senior Circuit Judge, joined by SENTELLE, Chief Judge, concurring in the denial of rehearing:

In our opinion, we noted that if the crowd acted as a unit, it was possible that "an entirely innocent person would be mistaken for a rioter"—but that would not rebut probable cause for that person's arrest. Prompted by our consideration of the petition for rehearing, we are doubtful that any one of the *marchers* should be considered innocent—at least at the summary judgment stage when we must credit the facts as put by the defendants.[1] As our opinion stated, the parties agreed that any of the marchers engaged in violence, or cheering the violence, had committed the crime of rioting or inciting a riot. But it will be recalled that a riot is defined as "a public disturbance involving an *assemblage* of five or more persons which by tumultuous and violent conduct ... creates grave danger of damage or injury to property or persons." All of the marchers, it might be thought, were part of the assemblage. And once the march turned violent, its character presumably extended to all who were aware of the violence and yet continued to march. Particularly at night when a number of marchers are engaged in violence, or cheering on the violence, other marchers are arguably not only supporting and thereby inciting the violence, by their very presence, they are impeding the police's efforts to identify the more active wrongdoers.

The plaintiffs claimed they were not aware of the violence, but a police officer testified that it appeared that all were cheering the violence and establishing probable cause to believe that all the marchers were at least aware of the violence would be a lesser standard. But of course, that has yet to be established.

---

* A statement by Senior Circuit Judge Silberman, joined by Chief Judge Sentelle, concurring in the denial of rehearing is attached.

** A statement by Circuit Judge Griffith concurring separately in the denial of rehearing is attached.

1. As opposed to a bystander who made no move to be part of the assemblage (or unit) but was mistakenly arrested. Of course, if the police arrested an undifferentiated group of marchers and bystanders with no effort to separate the two, that would be equivalent to what we held unconstitutional in *Barham v. Ramsey*, 434 F.3d 565, 574 (D.C.Cir.2006).

The District cited in its response to the petition, *Arizona v. Garland*, 157 Ariz. 246, 756 P.2d 343 (1988) holding that with regard to a prison riot:

> While mere presence will not support a charge of riot, *State v. Bad Heart Bull*, 257 N.W.2d 715, 717 (S.D.1977) a person must distance himself from the assembly when anyone in the group manifests an intent to engage in unlawful conduct. *Faulk v. State*, 608 S.W.2d 625, 631 (Tex.Crim.App.1980). Failure to do so results in "knowing participation in an assemblage which is creating an immediate danger of damage to property or injury to persons." *Id.* at 631. Appellant's activities disclose his active participation in furtherance of the disorder. Once an individual becomes aware of illegal activity by members of the group he is associated with, it is incumbent upon the individual to disassociate himself from the group.

To be sure, the District has not yet made the argument squarely that, assuming all the marchers were aware of the violence, they had actually violated the statute whether or not they were cheering, so it would be premature for us to consider probable cause for arrest, which presumably would be *a fortiori*, in light of that interpretation of the statute.

GRIFFITH, Circuit Judge, concurring separately in the denial of rehearing:

I take the unusual step of responding to the concurrence the majority has affixed to the panel's denial of rehearing. I do so because the majority has added to the problem of the panel opinion (about which I have already written) by offering an interpretation of the District of Columbia's riot statute that will chill lawful political expression. The District's statute identifies only two categories of offense: (1) willfully engaging in a riot; and (2) willfully inciting or urging others to riot. *See* D.C.Code § 22–1322 (2009). The majority would extend the statute to reach those who are "aware of the violence and yet continued to march" by presuming that a marcher who fails to quit a lawful protest after seeing others in the group begin to riot is, by his presence alone, willfully inciting or urging the others to riot. Under this reading, for which there is no warrant in the text of the statute or in the cases that have construed it, a peaceful marcher who becomes aware of the violent acts of a few on the fringes of the crowd could be arrested for rioting unless he abandons his otherwise lawful protest. This interpretation will make a would-be demonstrator think twice before taking to the steps of the Capitol or the National Mall. As the sole support for its view, the majority cites a decision of an Arizona intermediate appellate court that applied that state's law to a prison riot. *See State v. Garland*, 157 Ariz. 246, 756 P.2d 343, 345 (1988). The circumstances of that case seem far afield from those before us and offer a tenuous basis for the majority's unnecessarily expansive approach.