718 F.2d 730
 M.R. FERGUSON, Petitioner-Appellant,
v.
W.J. ESTELLE, Jr., Director, Texas Department of
Corrections, Respondent- Appellee.
Robert Wayne FAULK, Petitioner-Appellant,
v.
W.J. ESTELLE, Jr., Director, Texas Department of
Corrections, Respondent- Appellee.
 Nos. 82-2441, 82-2442.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 31, 1983.
 
 Goodwin, Goodwin & Buchanan, Paul N. Buchanan, Joe B. Goodwin, Beaumont, Tex., for petitioners-appellants.
 Douglas M. Becker, Leslie A. Benitez, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before WISDOM, BROWN and JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Wayne Faulk and M.R. Ferguson were convicted of riot by arson in violation of the Texas Anti-Riot Law, V.T.C.A., Penal Code Sec. 42.02 (1974). They petitioned for federal habeas corpus relief, charging that the statute is invalid on its face for overbreadth and vagueness, and because it imposes vicarious criminal responsibility on a basis too attenuated to satisfy constitutional concepts of personal guilt. The district court sustained the statute in all of its aspects, against all of their challenges. We affirm its denial of the writ of habeas corpus.
 
 I.
 
 2
 Faulk and Ferguson's convictions for riot by arson stem from their participation in the union/antiunion melee at the Cross Construction Company in Port Arthur, Texas, see Scott v. Moore, 680 F.2d 979 (5th Cir.1982) (en banc), rev'd sub nom. Carpenters, Local 610 v. Scott, --- U.S. ----, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). According to the opinion of the Texas Court of Criminal Appeals,[1] about fifty men armed with 2 X 4's, pipes, bottles, and rocks "invaded" the Cross job site, destroyed company property and attacked Cross employees. About twenty of the rioters turned over a thirty-foot office trailer located on the site, doused it with gasoline, and set it afire. The trailer was completely destroyed. Ferguson and Faulk were identified as members of the group which invaded the job site. Ferguson was seen carrying a club; Faulk was identified by a battered Cross employee as one of his assailants. Faulk v. State, 608 S.W.2d 625, 627-29 (Tex.Cr.App.1980). Neither was identified as a direct participant in the act of arson.
 
 
 3
 The statute under which Faulk and Ferguson were convicted provides that:
 
 
 4
 (a) For the purpose of this section, "riot" means the assemblage of seven or more persons resulting in conduct which:
 
 
 5
 (1) creates an immediate danger of damage to property or injury to persons; ...
 
 
 6
 (b) A person commits an offense if he knowingly participates in a riot.
 
 
 7
 (c) It is a defense to prosecution under this section that the assembly was at first lawful and when one of those assembled manifested an intent to engage in conduct enumerated in Subsection (a) of this section, the actor retired from the assembly.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 (e) Except as provided in Subsection (f) of this section, an offense under this section is a Class B misdemeanor.
 
 
 11
 (f) An offense under this section is an offense of the same classification as any offense of a higher grade committed by anyone engaged in the riot if the offense was:
 
 
 12
 (1) in the furtherance of the purpose of the assembly; or
 
 
 13
 (2) an offense which should have been anticipated as a result of the assembly.
 
 
 14
 V.T.C.A., Penal Code Sec. 42.02. Subsection (f) was used to hold them responsible for the act of arson, a second-degree felony carrying a penalty of two to twenty years imprisonment with possibility of a fine not to exceed $10,000.[2] V.T.C.A., Penal Code Secs. 12.33, 28.02 (1974). Faulk was sentenced to five years in prison, Ferguson to three.
 
 II.
 
 15
 Faulk and Ferguson charge that subsection (a)(1) is unconstitutional on its face[3] for vagueness and overbreadth chilling free exercise of the first amendment right to peaceable assembly.[4] Analysis begins with their overbreadth claim. Flipside, 102 S.Ct. at 1190.
 
 A.
 
 16
 A statute is unconstitutionally overbroad, if it, as written and as construed by the authoritative state court,[5] reaches a substantial amount of constitutionally protected conduct as well as unprotected conduct. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830; Ferber, 102 S.Ct. at 3361. The Court has counseled caution in the use of overbreadth principles to invalidate state criminal laws aimed at controlling harmful conduct.
 
 
 17
 [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct--even if expressive--falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect--at best a prediction--cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. Alderman v. United States, 394 U.S. 165, 174-75, 89 S.Ct. 961, 966-67, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.
 
 
 18
 Broadrick, 93 S.Ct. at 2917-18. The significance of a state's criminalization of its proscriptions to an examination of the statute's overbreadth was recently elucidated by the Court: "[While] the penalty to be imposed is relevant in determining whether demonstrable overbreadth is substantial, ... the fact that a criminal prohibition is involved does not obviate the need for the inquiry or a priori warrant a finding of substantial overbreadth." Ferber, 102 S.Ct. at 3363.
 
 
 19
 With these principles in mind, we turn to the petitioners' challenge to section 42.02 for overbreadth. Faulk and Ferguson claim that the ambiguities in the operative elements of the definition threaten to ensnare innocents unlucky enough to be on the scene of a precipitous outbreak of violence.[6] Focusing on the intent requirement of section 42.02(c), they charge that the statute criminalizes a knowing participation in an initially peaceable assembly that subsequently results in conduct creating an immediate danger of damage to persons or property.[7] In addition, they charge that the statute's definition of riot as "conduct ... creat[ing] an immediate danger of damage to property or injury to persons" is too imprecisely drawn to allow a participant to know when demonstrative conduct passes from a lawful, peaceable stage to a riot.
 
 
 20
 We think that the construction given to section 42.02(a)(1) by the Texas Court of Criminal Appeals should alleviate the first of the petitioners' concerns. In its consideration of their charges on review of their convictions, that Court held that section 42.02(a)(1), read in conjunction with the intent requirement of section 42.02(c), proscribes only an "actor['s] participat[ion] in [an] assemblage knowing that it is resulting in conduct creating an immediate danger of damage to property or injury to persons," Faulk, 608 S.W.2d at 630 (emphasis added). The Court held that the statute requires proof that the defendant "knowingly act[ed] with those so assembled in creating an immediate danger of damage," id. at 632 (emphasis added); it noted that the exculpatory provisions of section 42.02(d) would "provide[ ] a defense to one who participates in a lawful assembly which ultimately becomes unlawful, if he retires from the assembly when one of those assembled manifests an intent to engage in unlawful conduct," id. at 631. Its adjustment of the statute's mens rea requirement denies application of the law to members of an assembly who do not take part in the group's actions creating an imminent threat of violence. Mere presence at the scene of a riot will not, under its interpretation, suffice to support a conviction. So construed, section 42.02(a)(1) is "relieve[d] ... of the objection that it punishes without warning an offense of which the accused was unaware," Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945) (plurality opinion), cited with approval in Colautti v. Franklin, 439 U.S. 379, 99 S.Ct. 675, 685 n. 13, 58 L.Ed.2d 596 (1979). We conclude that the scienter element of section 42.02, as interpreted by the Texas Court of Criminal Appeals, has been sufficiently narrowed in its sweep to eliminate its potential for substantial impairment of the protected right of peaceable assembly.
 
 
 21
 The petitioners also find ambiguity in the statute's description of its prohibited acts as those "creat[ing] an immediate danger of damage to property or injury to persons." They contend that the phrase gives participants in an assembly no concrete measure by which they can evaluate the lawfulness of the group's activities, and so, in its uncertainty, chills their exercise of their constitutional rights. There are inherent limitations in the precision with which concepts can be conveyed by the English language. Overbreadth analysis does not demand perfect exactness; it does not demand that a law be striken for marginal prospects of unconstitutional application. That some limited degree of uncertainty inheres in a statute's phrase does not require that the statute be denied all application.
 
 
 22
 The dictionary defines "immediate" as "acting or being without the intervention of another object, cause or agency: direct, proximate; ... occurring, acting or accomplished without loss of time: made or due at once: instant," Webster's Third New International Dictionary 1129 (4th ed. 1976). In the case law, the notion of "immediate danger" has been equated with "clear and present danger," Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940),[8] to connote activity "directed to inciting or producing imminent lawless action and ... likely to incite or produce such action," Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). We think that, so understood, the phrase "immediate danger" is sufficiently clear to avoid a substantial impairment of first amendment rights. Should impairment occur, Justice Holmes' solution will suffice: "If there is any difficulty, which we are far from intimating, it will be time enough to consider it when raised by someone whom it concerns." United States v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 169, 74 L.Ed. 508 (1930).
 
 B.
 
 23
 Ferguson and Faulk urge us to hold section 42.02 unconstitutionally vague on its face, for the same ambiguities on which they based their allegations of overbreadth. The petitioners do not have standing to press this challenge. A facial challenge for vagueness is appropriate only on an allegation that the law is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Such a provision simply has no core." Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974); accord, Kolender v. Lawson, --- U.S. ----, ----, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (Justice White, dissenting). The petitioners do not claim that the law is inherently standardless, enforceable only on the exercise of an unlimited, and hence arbitrary, discretion vested in the state. They complain, rather, that the statute is imprecise. But a petitioner will not be permitted to challenge a statute for imprecision if his own conduct is clearly within the core of proscribed conduct. Such a petitioner has no standing to complain about the vagueness of a law as applied to the conduct of others. Kolender, at ----, 103 S.Ct. at 1865 (Justice White, dissenting); Flipside, 102 S.Ct. at 1192. The petitioners have not contended that section 42.02(a)(1) failed to give them fair notice that their conduct was forbidden by the statute, United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). They have no standing to litigate the vagueness argument they advance.
 
 III.
 
 24
 In their final challenge to their convictions, the petitioners charge that section 42.02(f) is unconstitutional on its face because it imposes criminal responsibility[9] for the acts of another in the absence of a relationship between the defendant and the criminal conduct sufficiently substantial to satisfy the due process clause.
 
 
 25
 An explanation of the operation of subsection (f) is a necessary predicate to analysis of its constitutionality. By its terms, the provision comes into play only when the defendant has been found to be in violation of one of the substantive provisions of subsection (a). Upon a determination that the defendant has committed the crime of riot, he becomes susceptible, under the terms of subsection (f), to imposition of vicarious responsibility for the crimes of a greater degree committed by other participants in the riot, either in furtherance of the purpose of the assembly or which should have been anticipated as a result of the assembly.
 
 
 26
 The due process constraints on attribution of vicarious criminal responsibility were explored in Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). Imputation of guilt for the acts of another was determined to be consonant with the principle of personal guilt so long as the defendant actively and knowingly participated in the group engaged in criminal conduct, intending to contribute to the success of its illegal activities. Id. at 1485-86. The critical element in Scale's analysis was the existence of a community of illicit intent between the individual held responsible for the criminal acts of others, and the actual perpetrators of those crimes. That shared purpose to achieve jointly held illegal aims is the common thread among the diverse doctrines of vicarious criminal responsibility, see Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946) (conspiracy); Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 769-70, 93 L.Ed. 919 (1949) (complicity); United States v. Elliott, 571 F.2d 880, 903-04 (5th Cir.1978) (RICO enterprise liability).
 
 
 27
 We think that, although the Texas Anti-Riot law is in some aspects doctrinely dissimilar from the more familiar forms of vicarious criminal responsibility, the critical element of a shared illicit intent predicate to the constitutional operation of subsection (f) is present in the mens rea element of section 42.02(a)'s substantive offenses. As we have explained, see ante at 733-734, the offense of riot incorporates a determination that the defendant acted with an assemblage of seven or more persons, knowing that the conduct of the assembly was creating an immediate danger of damage to property or injury to persons. That determination meets the constitutional requisites spelled out in Scales, 81 S.Ct. at 1845-46, of active participation with others toward the achievement of the ends recognized to be illegal.
 
 
 28
 The petitioners, however, suggest that subsection (f) is fatally flawed in that it allows imposition of vicarious responsibility either on a showing that the act of another was in furtherance of the purpose of the assembly or was an act which should have been anticipated as a result of the assembly. They contend both elements to be necessary in order to ensure that a participant in a joint illegal enterprise is not charged with responsibility for an act not reasonably foreseeable as a consequence of the group's wrongful purpose. We think their concerns, while not wholly unwarranted, do not require a determination that subsection (f) is in all circumstances without valid application. The phrase "in furtherance of the purpose of the assembly" parallels the phrase "in furtherance of the purpose of the conspiracy" held in Pinkerton, 66 S.Ct. at 1183-84, to provide, in conjunction with the finding of the requisite shared intent, adequate basis for the vicarious responsibility of one conspirator for the crimes of another. Pinkerton interpreted that phrase to imply that the crime in question was "within the scope of the unlawful project [and] was ... a part of the ramifications of the plan reasonably foresee[able] as a necessary or natural consequence of the unlawful agreement," id. at 1184. Both aspects inhere in the phrase's logical and usual meaning. If, on the facts of a particular case, it should appear that either is absent, an important question would arise, Pinkerton, 66 S.Ct. at 1184; see United States v. Dickerson, 508 F.2d 1216, 1218 (2d Cir.1975); Norris v. United States, 152 F.2d 808, 809 (5th Cir.1946), cert. denied, 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623 (1946). But the petitioners have not suggested that theirs is such a case, and they are without standing to raise the potential problems of others.
 
 IV.
 
 29
 The district court's denial of the writ of habeas corpus is affirmed.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Apparently because they challenge only the facial validity of the statute, the petitioners did not file the records of their state proceedings in support of their federal action. Our knowledge of the facts of their cases is limited to the facts stated in the opinion of the Texas Court of Criminal Appeals affirming their convictions
 
 
 [2]
 The penalty for simple riot under subsection (e) would have been imprisonment for not more than 180 days, or a fine of up to $1000, or both. V.T.C.A., Penal Code Sec. 12.22 (1974)
 
 
 [3]
 "A 'facial challenge,' in this context, means a claim that the law is 'invalid in toto--and therefore incapable of any application.' Steffel v. Thompson, 415 U.S. 452, 474, 94 S.Ct. 1209-1233, 39 L.Ed.2d 505 (1974)." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982)
 
 
 [4]
 Overbreadth analysis, though most often applied in the context of infringements on the right of free speech, is also proper in the context of the closely associated first amendment right of association. Village of Schaumberg v. Citizens for a Better Environment, 444 U.S. 620, 100 S.Ct. 826, 835, 63 L.Ed.2d 73 (1980). Indeed, the origins of the doctrine lie in an examination of a state statute restricting expressive associational activity. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)
 
 
 [5]
 In evaluating the facial constitutionality of a state statute, a federal court is bound by the constructions placed on that statute by state court decisions. New York v. Ferber, 457 U.S. 747, 749, 769 n. 24, 102 S.Ct. 3348, 3349, 3361 n. 24, 73 L.Ed.2d 1113; Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972)
 
 
 [6]
 Our analysis of the petitioners' charge of overbreadth is, by virtue of the nature of that challenge, entwined with their allegations of vagueness. As the Supreme Court recently observed, "[t]o [the] extent [that a law's overbreadth is attributed to its alleged ambiguity], the vagueness of the law affects overbreadth analysis. The [Supreme] Court has long recognized that ambiguous meanings cause citizens to 'steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.' " Flipside, 102 S.Ct. at 1160 n. 6; see Tribe, American Constitutional Law Sec. 12-28 (noting that vagueness and overbreadth may intersect where a statute is challenged for ambiguities threatening to engulf activities protected by the first amendment)
 
 
 [7]
 Their paradigm is a peaceful demonstration during which a participant, of his own accord and wholly contrary to the group's pre-demonstration pact of nonviolence, pulls out a Molotov cocktail: the petitioners contend that under Sec. 42.02(a)(1), as written and construed, all of the marchers would be guilty of riot as soon as their member threatens to toss his bomb
 
 
 [8]
 "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious." Ibid
 
 
 [9]
 The state asserts and the district court concluded that Sec. 42.02(f) is a penalty enhancement provision. We disagree, for three reasons. First, the plain words of the statute provide that the offense of riot "is an offense of the same classification as any offense of a higher grade committed by anyone engaged in the riot," ibid. (emphasis added), instead of "shall be punished as any offense of a higher grade committed by anyone engaged in the riot." Second, the Texas Court of Criminal Appeals construed the provision as imposing criminal responsibility on a member of a riotous assembly for the acts of other members of the group. Faulk, 608 S.W.2d at 629. Third, the petitioners were charged and convicted of the felony offense of riot by arson, not of the misdemeanor of riot with punishment to be assessed as a second-degree felony. The adequacy of the provision must, therefore, be read against the constitutional standards constraining the imposition of criminal responsibility for the acts of another