**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HUMANITARIAN LAW PROJECT;
RALPH FERTIG; ILANKAI THAMIL
SANGAM; TAMILS OF NORTHERN
CALIFORNIA; TAMIL WELFARE AND
HUMAN RIGHTS COMMITTEE;
FEDERATION OF TAMIL SANGAMS OF
NORTH AMERICA; WORLD TAMIL
COORDINATING COMMITTEE;
NAGALINGAM JEYALINGAM, Dr.,
            *Plaintiffs-Appellees,*

v.

MICHAEL B. MUKASEY,* Attorney
General, of the United States;
UNITED STATES DEPARTMENT OF
JUSTICE; CONDOLEEZA RICE,
Secretary of State; UNITED STATES
DEPARTMENT OF STATE,
            *Defendants-Appellants.*

No. 05-56753

D.C. Nos.
CV-98-01971-ABC
CV-03-06107-ABC

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

1

HUMANITARIAN LAW PROJECT;
RALPH FERTIG; ILANKAI THAMIL
SANGAM; TAMILS OF NORTHERN
CALIFORNIA; TAMIL WELFARE AND
HUMAN RIGHTS COMMITTEE;
FEDERATION OF TAMIL SANGAMS OF
NORTH AMERICA; WORLD TAMIL
COORDINATING COMMITTEE;
NAGALINGAM JEYALINGAM, Dr.,
            *Plaintiffs-Appellants,*

            v.

MICHAEL B. MUKASEY,* Attorney
General, of the United States;
UNITED STATES DEPARTMENT OF
JUSTICE; CONDOLEEZA RICE,
Secretary of State; UNITED STATES
DEPARTMENT OF STATE,
            *Defendants-Appellees.*

No. 05-56846

D.C. Nos.
CV-98-01971-ABC
CV-03-06107-ABC

ORDER
AMENDING
OPINION AND
DENYING THE
PETITION FOR
PANEL
REHEARING AND
PETITION FOR
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
May 1, 2007—Pasadena, California

Filed December 10, 2007
Amended January 5, 2009

Before: Harry Pregerson, Sidney R. Thomas, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Pregerson

**COUNSEL**

Peter D. Keisler, Assistant Attorney General; Debra Wong Yang, United States Attorney; Gregory G. Katsas, Deputy Assistant Attorney General; and Douglas N. Letter, Joshua Waldman, Appellate Staff, Civil Division, for the defendants-appellants/appellees.

David Cole, Georgetown University Law Center; Shayna Kadidal, Center for Constitutional Rights; Carol A. Sobel, Law Office of Carol A. Sobel; Paul L. Hoffman, Schonbrun, De Simone, Seplow Harris & Hoffman, LLP; Visuvanathan Rudrakumaran, Plaintiff World Tamil Coordinating Comm., for the plaintiffs-appellees/appellants.

---

**ORDER**

The opinion filed in this case on December 10, 2007, slip op. at 16135, is hereby amended as follows:

At slip op. 16157, line 12: at the end of the paragraph, add the following footnote:

> The issue of a facial vagueness challenge is not before this court. We therefore do not reach that issue.

At slip op. 16160, line 10: at the end of the paragraph, add the following footnote:

> Whether the outcome would be different if evidence were presented showing that "service" rendered to a designated foreign terrorist organization resulted in the receipt of money by the designated foreign terrorist organization itself is not an issue presented by this case. We therefore do not reach that issue.

With these amendments, the panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc. The full court has been advised of these amendments and of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. (Fed. R. App. P. 35.) Future petitions for panel rehearing and future petitions for rehearing en banc will not be entertained.

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

___

**OPINION**

PREGERSON, Circuit Judge:

We are once again called upon to decide the constitutionality of sections 302 and 303 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and its 2004 amendment, the Intelligence Reform and Terrorism Prevention Act ("IRTPA").

## I.  OVERVIEW

Section 302(a) of AEDPA, Pub. L. 104-132, 110 Stat. 1214 (1996), codified in 8 U.S.C. § 1189, authorizes the Secretary of State (the "Secretary") to designate a group as a "foreign terrorist organization." Section 303(a) makes it a crime for anyone to provide support to even the nonviolent activities of the designated organization. *See* 18 U.S.C. § 2339B(a). Specifically, 8 U.S.C. § 1189(a)(1) authorizes the Secretary of State

> to designate an organization as a foreign terrorist organization . . . if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity . . . ; and (C) the

terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States.

8 U.S.C. § 1189(a)(1).

The pertinent facts may be found in prior published decisions in this case. *See Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ("*HLP I*"), *cert. denied*, 532 U.S. 904 (2001); *see also Humanitarian Law Project v. United States Dep't of Justice*, 352 F.3d 382 (9th Cir. 2003) ("*HLP II*"), *vacated*, 393 F.3d 902 (9th Cir. 2004). We, therefore, set forth only a brief overview of the facts of this case.

Plaintiffs are six organizations, a retired federal administrative law judge, and a surgeon. The Kurdistan Workers Party, a.k.a Partiya Karkeran Kurdistan ("PKK"), and the Liberation Tigers of Tamil Eelam ("LTTE") engage in a wide variety of unlawful and lawful activities. Plaintiffs seek to provide support only to nonviolent and lawful activities of PKK and LTTE. This support would help Kurds living in Turkey and Tamils living in Tamil Eelam in the Northern and Eastern provinces of Sri Lanka to achieve self-determination.[1]

On October 8, 1997, the Secretary of State designated PKK, LTTE, and twenty-eight other foreign organizations as "foreign terrorist organizations." *See* 62 Fed. Reg. 52, 650, 52,650-51 (Oct. 8, 1997). To this day, both PKK and LTTE

---

[1]Plaintiffs who support PKK want: (1) to train members of PKK on how to use humanitarian and international law to peacefully resolve disputes, (2) to engage in political advocacy on behalf of Kurds who live in Turkey, and (3) to teach PKK members how to petition various representative bodies such as the United Nations for relief.

Plaintiffs who support LTTE want: (1) to train members of LTTE to present claims for tsunami-related aid to mediators and international bodies, (2) to offer their legal expertise in negotiating peace agreements between the LTTE and the Sri Lankan government, and (3) to engage in political advocacy on behalf of Tamils who live in Sri Lanka.

remain on the designated foreign terrorist organization list. Plaintiffs, fearing that they would be criminally investigated, prosecuted, and convicted under section 2339B(a), have been withholding their support for the PKK and LTTE from the time they were designated as foreign terrorist organizations.

On March 19, 1998, Plaintiffs filed a complaint in the district court (CV-98-01971-ABC; appeal No. 05-56753), alleging that AEDPA violated their First and Fifth Amendment rights. Plaintiffs sought a preliminary injunction to bar the government from enforcing against them AEDPA's prohibition against providing "material support or resources" to PKK and LTTE. In support of their motion for a preliminary injunction, Plaintiffs argued: (1) that AEDPA violated their First Amendment right to freedom of association and their Fifth Amendment right to due process because section 2339B(a) imposed a criminal penalty for their association with the designated organizations without requiring the government to prove that Plaintiffs had the specific intent to further the designated organizations' unlawful goals; (2) that AEDPA violated their First Amendment right to association by prohibiting them from making political contributions to the designated organizations; and (3) that AEDPA violated their First and Fifth Amendment rights because it gave the Secretary of State unfettered licensing power to designate a group as a foreign terrorist organization.

In June 1998, the district court partially granted Plaintiffs' motion for a preliminary injunction and enjoined the Attorney General's enforcement of AEDPA with respect to its prohibition on providing "training" and "personnel" to PKK and LTTE. *See Humanitarian Law Project v. Reno*, 9 F. Supp. 2d 1205, 1215 (C.D. Cal. 1998) ("*DC-HLP I*"). The district court held that "Plaintiffs have demonstrated a probability of success on their claim that the terms 'personnel' and 'training' are impermissibly vague." *Id*. The district court rejected the remainder of Plaintiffs' challenges, holding that AEDPA's prohibition on providing "material support or resources" to

designated foreign terrorist organizations is a "content-neutral limitation on Plaintiffs' right to freedom of association" and "is subject to an intermediate scrutiny level of review." *Id.* at 1212. The district court also held that "AEDPA does not impose 'guilt by association alone' in violation of the First Amendment because the AEDPA only limits the permissible *ways* in which Plaintiffs can associate with PKK and LTTE." *Id.* (emphasis in the original). In other words, the district court held that AEDPA does not criminalize mere membership. Rather, AEDPA criminalizes conduct that provides "material support or resources" to a designated foreign terrorist organization. Finally, the district court held that Plaintiffs failed to establish a probability of success on their claim that AEDPA affords the Secretary of State unfettered discretion to designate a group as a foreign terrorist organization. *See id.* at 1213.

Both parties appealed the district court's order. On March 3, 2000, we affirmed the district court. *See HLP I*. In *HLP I*, we determined that AEDPA section 2339B is a content-neutral regulation of conduct subject to intermediate scrutiny. *See id.* at 1135. Further, we rejected Plaintiffs's licensing scheme argument and held that the discretion accorded to the Secretary of State to designate a group as a foreign terrorist organization is not "unfettered" "because the regulation involves the conduct of foreign affairs" for which the courts "owe the executive branch even more latitude." *Id.* at 1137. Finally, we agreed with Plaintiffs that AEDPA's prohibitions on providing "personnel" and "training" to designated foreign terrorist organizations were unconstitutionally vague because these prohibitions could be read to criminalize conduct protected by the First Amendment. *See id.* at 1137-38.

After the case went back to the district court, the government moved to dismiss and both parties sought summary judgment in their favor. The district court re-affirmed its prior decision in an unpublished order. *See Humanitarian Law Project v. Reno*, No. CV 98-01971 ABC, 2001 U.S. Dist.

LEXIS 16729 (C.D. Cal. Oct. 3, 2001). The district court entered a permanent injunction against enforcing AEDPA's prohibition on providing "personnel" and "training" to designated organizations. *See id.* at \*38. Both parties appealed. On appeal, in addition to renewing previously raised arguments, Plaintiffs also raised a Fifth Amendment due process challenge, arguing that AEDPA section 2339B imposes vicarious liability because it does not contain a mens rea element.

On October 26, 2001, Congress enacted the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("USA PATRIOT Act"), Pub. L. No. 107-56, § 805(a)(2), 115 Stat. 272 (Oct. 26, 2001). The USA PATRIOT Act amended AEDPA's definition of "material support or resources" to include the prohibition against providing "expert advice or assistance" to a designated foreign terrorist organization. *See* 18 U.S.C. § 2339A(b) and § 2339B(g)(4).

On August 27, 2003, Plaintiffs filed a separate complaint in the district court (CV-03-06107-ABC; appeal No. 05-56846), challenging AEDPA's ban on providing "expert advice or assistance" to a designated foreign terrorist organization. The district court found that term to be unconstitutionally vague, but not overbroad. *See Humanitarian Law Project v. Ashcroft*, 309 F. Supp. 2d 1185 (C.D. Cal. 2004). The district court granted Plaintiffs's request for injunctive relief. *See id.* at 1204. Both parties appealed.

On December 3, 2003, we affirmed the district court's holding that the terms "training" and "personnel" were void for vagueness. *See Humanitarian Law Project v. United States Dep't of Justice*, 352 F.3d 382 (9th Cir. 2003) ("*HLP II*"), *vacated*, 393 F.3d 902 (9th Cir. 2004). A majority of the panel also read into the statute a mens rea requirement holding that, "to sustain a conviction under § 2339B, the government must prove beyond a reasonable doubt that the donor had knowledge that the organization was designated by the

Secretary as a foreign terrorist organization or that the donor had knowledge of the organization's unlawful activities that caused it to be so designated." *Id*. at 403. The parties sought, and we granted, en banc review of *HLP II*. *See Humanitarian Law Project v. United States Dep't of Justice*, 382 F.3d 1154 (9th Cir. 2004).

On December 17, 2004, three days after the en banc panel heard oral argument, Congress passed the Intelligence Reform and Terrorism Prevention Act ("IRTPA") which amended AEDPA. As amended, AEDPA now provides in part:

> Whoever *knowingly* provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339B(a)(1) (emphasis added).

> The term "material support or resources" includes:

> any property, tangible or intangible, or *service*, including currency or monetary instruments or financial securities, financial services, lodging, *training*, *expert advice or assistance*, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, *personnel* (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b) (emphasis added).

In enacting IRTPA, Congress amended the definition of "material support or resources" to include an additional ban on providing "service." *See id*. Congress also defined for the

first time the terms "training" and "expert advice or assistance," 18 U.S.C. § 2339(A)(b)(2)-(3), and clarified the prohibition against providing "personnel" to designated organizations, 18 U.S.C. § 2339B(h).

Post-IRTPA, "training" refers to "instruction or teaching designed to impart a specific skill, as opposed to general knowledge." 18 U.S.C. § 2339A(b)(2). "Expert advice or assistance" encompasses "advice or assistance derived from scientific, technical or other specialized knowledge." 18 U.S.C. § 2339A(b)(3). "Personnel" includes "1 or more individuals" who "work under th[e] terrorist organization's direction or control or [who] organize, manage, supervise, or otherwise direct the operation of that organization." 18 U.S.C. § 2339B(h). AEDPA, as amended by IRTPA, narrows the definition of "personnel" by providing that "[i]ndividuals who act *entirely independently* of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction or control." *Id.* (emphasis added).

Further, IRTPA provides that AEDPA's prohibition on providing "material support or resources" to a designated foreign terrorist organization includes a mens rea requirement. To violate the statute, a person who provides "material support or resources" to a designated organization must *know* that (1) "the organization is a designated terrorist organization,"(2) "the organization has engaged or engages in terrorist activity," or that (3) "the organization has engaged or engages in terrorism."[2] 18 U.S.C. § 2339B(a)(1).

---

[2]This language essentially adopts our holding in HLP II, where we held that "to sustain a conviction under § 2339B, the government must prove beyond a reasonable doubt that the donor had knowledge that the organization was designated by the Secretary as a foreign terrorist organization or that the donor had knowledge of the organization's unlawful activities that caused it to be so designated." *HLP II*, 352 F.3d at 403.

Lastly, AEDPA, as amended by IRTPA, gives the Secretary of State discretion to authorize (with the concurrence of the Attorney General) certain forms of support[3] otherwise proscribed under section 2339B(a) unless such support "may be used to carry out terrorist activity." 18 U.S.C. § 2339B(j).

Because of the amendments to AEDPA contained in IRTPA, the en banc panel, on December 21, 2004, "vacate[d] the judgment and injunction [of the *HLP II* panel] regarding the terms 'personnel' and 'training,' and remanded [this case] to the district court for further proceedings." *See Humanitarian Law Project v. United States Dep't of State*, 393 F.3d 902, 902 (9th Cir. 2004) ("*HLP en banc*"). The en banc panel also affirmed the district court's rulings on the rest of Plaintiffs' First Amendment challenges "for the reasons set out in [*HLP I*]," and vacated the decision in *HLP II*. *Id*. On April 1, 2005, we remanded Plaintiffs' separate challenge to the term "expert advice or assistance" to the district court to consider IRTPA's impact on the litigation.

On remand, the district court consolidated the two cases (the "personnel" and "training" challenge and the "expert advice and assistance" challenge). Plaintiffs also challenge IRTPA's newly added term "service." The parties thereafter filed cross-motions for summary judgment. On July 25, 2005, the district court granted in part and denied in part the summary judgment motions in the consolidated cases. *See Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134 (C.D. Cal. 2005) ("*DC-HLP III*"). The district court held that the terms "training" and "service" are unconstitutionally vague. *Id*. at 1152. With respect to the term "expert advice or assistance," the district court held that the "other specialized knowledge" part of the definition is void for vagueness, but that the "scientific" and "technical" knowledge part of the

---

[3]Section 2339B(j) allows the Secretary of State to exempt from prosecution persons who may otherwise be held liable for providing "training," "expert advice or assistance," and "personnel." 18 U.S.C. § 2339B(j).

definition was not vague. *Id.* at 1151 & n.23. The district court also held that the newly-added definition of "personnel" found in AEDPA section 2339B(h) cured the vagueness of that term. *Id.* at 1152. The district court rejected the rest of Plaintiffs' challenges and granted partial summary judgment for the government. *See id.* at 1155. Both parties timely appealed.

## II.   STANDARD OF REVIEW

We review the district court's order granting summary judgment de novo. *See Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact. *See id.*

The district court's determination that a statute is unconstitutionally vague is reviewed de novo. *See United States v. Wyatt*, 408 F.3d 1257, 1260 (9th Cir. 2005).

## III.   DISCUSSION

### A.   *Specific Intent*

In their prior appeals, Plaintiffs argued that AEDPA section 2339B(a) violates their Fifth Amendment due process rights because that section does not require proof of mens rea to convict a person for providing "material support or resources" to a designated foreign terrorist organization. *See HLP-II*, 352 F.3d at 394. In *HLP-II*, we read the statute to require that the donor of the "material support or resources" have knowledge "either of an organization's designation or of the unlawful activities that caused it to be so designated." *Id.* at 402-03.

In December 2004, Congress passed IRTPA that revised AEDPA to essentially adopt our reading of AEDPA section

2339B to include a knowledge requirement. Thus, post-IRTPA, to convict a person for providing "material support or resources" to a designated foreign terrorist organization, the government must prove that the donor defendant "ha[d] knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a) (citations omitted). As explained above, on December 21, 2004, the en banc panel vacated our judgment in *HLP II*, and remanded the case to the district court for further proceedings in light of IRTPA. *See HLP en banc*, 393 F.3d 902. The district court's decision on remand is now the matter before us.

Plaintiffs argue that IRTPA does not sufficiently cure AEDPA section 2339B's mens rea deficiency. They contend that section 2339B(a) continues to violate due process because it does not require the government to prove that the donor defendant acted with specific intent to further the terrorist activity of the designated organization. Plaintiffs urge us to invalidate the statute or, alternatively, to read a specific intent requirement into the statute.

**[1]** "In our jurisprudence guilt is personal." *Brown v. United States*, 334 F.2d 488, 495 (9th Cir. 1964) (internal quotations and citation omitted). Thus, we must "construe [a criminal] statute in light of the fundamental principle that a person is not criminally responsible unless 'an evil-meaning mind' accompanies 'an evil-doing hand.' " *United States v. Nguyen*, 73 F.3d 887, 890 (9th Cir. 1995) (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952)). In other words, unless Congress expressly communicates its intent to dispense with a mens rea requirement and create strict criminal liability, the notion of "personal guilt" requires some culpable intent before criminal liability attaches.

"[D]etermining the mental state required for commission of a federal crime requires 'construction of the statute and . . .

inference of the intent of Congress.' " *Staples v. United States*, 511 U.S. 600, 605 (1994) (quoting *United States v. Balint*, 258 U.S. 250, 253 (1922)). We remain mindful that we "should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute." *Morissette*, 342 U.S. at 263.

In *Liparota v. United States*, 471 U.S. 419 (1985), the Supreme Court examined the constitutionality of a federal statute that criminalized the acquisition or possession of food stamps in any unauthorized manner. *See id*. at 420-21. The statute contained no explicit mens rea requirement. The Court read into the statute the requirement that the government prove that "the defendant *knew* his conduct to be unauthorized by statute or regulations." *Id*. at 425-26 (emphasis added) (noting that "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct").[4]

**[2]** Here, AEDPA section 2339B(a) already requires the government to prove that the donor defendant provided "material support or resources" to a designated foreign terrorist organization with *knowledge* that the donee organization is a designated foreign terrorist organization, or with *knowledge* that the organization is or has engaged in terrorist activities or terrorism. 18 U.S.C. § 2339B(a). As amended, AEDPA section 2339B(a) complies with the "conventional requirement

---

[4]The other two cases Plaintiffs rely on, *Staples*, 511 U.S. 600, and *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), also involved statutes that did not contain an explicit mens rea requirement. In *Staples*, the Supreme Court interpreted the statute punishing possession of an unregistered machine gun to require knowledge that the gun he or she possessed is unregistered. *See Staples*, 511 U.S. at 619. Similarly, in *X-Citement Video*, the Court interpreted the term "knowingly" to require that defendant knew that the persons appearing in a sexually explicit video were minors. *See X-Citement Video*, 513 U.S. at 78. However, as in *Liparota*, the Court required that, in the absence of a specific mens rea requirement, the government prove the defendant acted *knowingly*.

for criminal conduct — awareness of some wrongdoing." *Staples*, 511 U.S. at 606-07. Thus, a person with such knowledge is put on notice that "providing material support or resources" to a designated foreign terrorist organization is unlawful. Accordingly, we hold that the amended version of section 2339B comports with the Fifth Amendment's requirement of "personal guilt."

**[3]** Plaintiffs urge us to read a specific intent requirement into AEDPA section 2339B. They rely on *Scales v. United States*, 367 U.S. 203 (1961). In *Scales*, the Supreme Court held that it was wrong to impute criminal guilt based on membership in an organization without proof that the defendant acted with culpable intent. *See id.* at 224-25. As amended, section 2339B(a) does not proscribe membership in or association with the terrorist organizations,[5] but seeks to punish only those who have provided "material support or resources" to a foreign terrorist organization with *knowledge* that the organization was a designated foreign terrorist organization, or that it is or has engaged in terrorist activities or terrorism. Accordingly, unlike the statute in *Scales* which was silent with respect to requisite mens rea, section 2339B(a) exposes one to criminal liability only where the government proves that the donor defendant acted with culpable intent — knowledge.

At oral argument, Plaintiffs conceded that, were we to read into section 2339B a specific intent requirement that the person providing "material support or resources" do so with an intent to further the organization's unlawful goals (terrorist activity), we would be extending *Scales*. Because we find that acting with "knowledge" satisfies the requirement of "personal guilt" and eliminates any due process concerns, we decline Plaintiffs' invitation to extend the holding in *Scales*.

---

[5]Although section 2339B(a) does not punish mere membership, the statute does prohibit the paying of membership dues. *See HLP I*, 205 F.3d at 1134 (rejecting Plaintiffs' argument that "the First Amendment requires the government to demonstrate a specific intent to aid an organization's illegal activities before attaching liability to the donation of funds[ ]").

Plaintiffs also rely on what they consider "vicarious criminal liability" cases where courts required proof of intent to further the group's illegal ends. Those cases are distinguishable. We disagree with Plaintiffs' characterization of section 2339B(a) as a statute that imposes "vicarious criminal liability."

**[4]** Vicarious liability involves holding one person accountable for the actions of another. Section 2339B(a) criminalizes the act of knowingly providing "material support or resources" to a designated foreign terrorist organization. Donor defendants are penalized for the criminal act of support. Donor defendants cannot be penalized under section 2339B(a) for the illegal conduct of the donee organization.

*Ferguson v. Estelle*, 718 F.2d 730 (5th Cir. 1983), is instructive. In *Ferguson*, defendants, participants in a violent riot, were prosecuted for arson committed by other rioters. *See id*. at 731-32. The court held that the state (Texas) could prosecute the defendants for arson even though they were not the arsonists. *See id*. at 731. The court noted that the statute at issue conformed with *Scales*'s requirement of personal guilt because, to obtain a conviction, the state had to prove that the accused riot participants had specific intent to further the illegal aims of the rioters who committed arson. *Id*. at 736.

**[5]** Unlike the statute at issue in *Ferguson*, section 2339B(a) seeks to punish only those who commit the acts proscribed by the statute. In other words, a person who provides "material support or resources" to a designated foreign terrorist organization is liable for knowingly doing so in violation of section 2339B(a). Section 2339B(a) does not impose "vicarious criminal liability" because the statute cannot be invoked to punish the donor defendant for crimes committed by the donee foreign terrorist organization. A person cannot be convicted of murder under section 2339B(a) if the foreign terrorist organization committed an act of terrorism that took innocent lives. In sum, because section 2339B(a) does not

impose "vicarious criminal liability," due process is satisfied without proof of specific intent to further the organization's illegal goals.

Finally, in enacting IRTPA, Congress explicitly stated that knowledge of the organization's designation as a foreign terrorist organization, or knowledge of its engagement in terrorist activities or terrorism is required to convict under section 2339B(a). As the district court correctly observed, Congress could have, but chose not to, impose a requirement that the defendant act with the specific intent to further the terrorist activity of the organization, a requirement clearly set forth in sections 2339A and 2339C of the statute, but left out of section 2339B. *See DC HLP III*, 380 F. Supp. 2d at 1146. Moreover, it is not our role to rewrite a statute, and we decline to do so here. *See HLP I*, 205 F.3d at 1137-38.

Because there is no Fifth Amendment due process violation, we affirm the district court on this issue.

*B.   Vagueness*

**[6]** AEDPA section 2339B(a), as amended by IRTPA in December 2004, now criminalizes the act of knowingly providing "material support or resources" to a designated foreign terrorist organization. The amended statute defines "material support and resources" as:

> any property, tangible or intangible, or *service*, including currency or monetary instruments or financial securities, financial services, lodging, *training*, *expert advice or assistance*, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, *personnel* (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b) (emphasis added).

Plaintiffs argue that this amended definition is impermissibly vague because the statute fails to notify a person of ordinary intelligence as to what conduct constitutes "material support or resources." Specifically, Plaintiffs argue that the prohibitions on providing "training," "expert advice or assistance," "service," and "personnel" to designated organizations are vague because they are unclear and could be interpreted to criminalize protected speech and expression.

The Due Process Clause of the Fifth Amendment requires that statutes clearly delineate the conduct they proscribe. *See Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998). While due process does not "require 'impossible standards' of clarity," *Kolender v. Lawson*, 461 U.S. 352, 361 (1983), the "requirement for clarity is enhanced when criminal sanctions are at issue or when the statute abut[s] upon sensitive areas of basic First Amendment freedoms," *Info. Providers' Coal. for the Def. of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir. 1991) (alteration in original) (internal quotation marks omitted). In such cases, the statute "must be sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited." *HLP I*, 205 F.3d at 1137 (quoting *Foti*, 146 F.3d at 638) (internal quotation marks omitted). Moreover, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Foti*, 146 F.3d at 638-39 (internal quotation marks omitted).

Vague statutes are invalidated for three reasons: "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Id*. at 638.

### 1. *"Training"*

In *HLP I*, we held that the term "training" under AEDPA was unconstitutionally vague. 205 F.3d at 1138. At the time of Plaintiffs' initial challenge in 1998, AEDPA provided no definition of the term "training." After we issued our opinion in *HLP I* in 2000, Congress amended the statute and defined the term "training" as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge." 18 U.S.C. § 2339A(b)(2). On remand, Plaintiffs argued to the district court that the term "training" as defined by IRTPA remains unconstitutionally vague. Plaintiffs contended that persons of ordinary intelligence must discern whether the topic they wish to teach to members of designated organizations amounts to "teaching designed to impart a specific skill," which is criminalized, or "general knowledge," which is not. Specifically, Plaintiffs contended that they must guess whether training PKK members in how to use humanitarian and international human rights law to seek peaceful resolution of ongoing conflict amounts to teaching a "specific skill" or "general[ized] knowledge."

The district court again agreed with Plaintiffs. The district court held that IRTPA did not cure the vagueness of the term "training," and enjoined the government from enforcing against Plaintiffs AEDPA's ban on providing "training." *See DC-HLP III*, 380 F. Supp. 2d at 1150, 1156. We agree.

Generally, we would start our vagueness analysis by considering the plain meaning of the language at issue. *See Johnson v. Aljian*, 490 F.3d 778, 780 (9th Cir. 2007). However, where Congress expressly defines a term, the definition provided by Congress guides our vagueness analysis. *See United States. v. Rowland*, 464 F.3d 899, 905 (9th Cir. 2006).

[7] To survive a vagueness challenge, the statute must be sufficiently clear to put a person of ordinary intelligence on notice that his or her contemplated conduct is unlawful. *See*

*Foti*, 146 F.3d at 638. Because we find it highly unlikely that a person of ordinary intelligence would know whether, when teaching someone to petition international bodies for tsunami-related aid, one is imparting a "specific skill" or "general knowledge," we find the statute's proscription on providing "training" void for vagueness. *See HLP I*, 205 F.3d at 1138 (finding the term "training" impermissibly vague because "a plaintiff who wishes to instruct members of a designated group on how to petition the United Nations to give aid to their group could plausibly decide that such protected expression falls within the scope of the term 'training.' "); *see also Info. Providers' Coalition*, 928 F.2d at 874.[6]

**[8]** Even if persons of ordinary intelligence could discern between the instruction that imparts a "specific skill," as opposed to one that imparts "general knowledge," we hold that the term "training" would remain impermissibly vague. As we previously noted in *HLP I*, limiting the definition of the term "training" to the "imparting of skills" does not cure unconstitutional vagueness because, so defined, the term "training" could still be read to encompass speech and advocacy protected by the First Amendment. *See HLP I*, 205 F.3d at 1138 (finding "training" void for vagueness because "it is easy to imagine protected expression that falls within the bounds of this term").[7]

For the foregoing reasons, we reject the government's challenge and agree with the district court that the term "training" remains impermissibly vague because it "implicates, and potentially chills, Plaintiffs' protected expressive activities

---

[6]The issue of a facial vagueness challenge is not before this court. We therefore do not reach that issue.

[7]In deciding previously raised challenges such as vagueness, we are bound by our decision in *HLP I. See Murdoch v. Castro*, 489 F.3d 1063, 1067 (9th Cir. 2007) (" '[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' ").

and imposes criminal sanctions of up to fifteen years imprisonment without sufficiently defining the prohibited conduct for ordinary people to understand." *DC-HLP III*, 380 F. Supp. 2d at 1150 (citing *Info. Providers' Coalition*, 928 F.2d at 874).

### 2.    *"Expert Advice or Assistance"*

The district court previously invalidated the undefined term "expert advice or assistance" on vagueness grounds. The district court reasoned that the prohibition against providing "expert advice or assistance" could be construed to criminalize activities protected by the First Amendment. *Id.* at 1151. The government appealed. We now have the benefit of IRTPA's language while reviewing this appeal.

**[9]** IRTPA defines the term "expert advice or assistance" as imparting "scientific, technical, or other specialized knowledge." 18 U.S.C. § 2339A(b)(3).

The government argues that the ban on "expert advice or assistance" is not vague. The government relies on the Federal Rules of Evidence's definition of expert testimony as testimony based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993). The government argues that this definition gives a person of ordinary intelligence reasonable notice of conduct prohibited under the statute. Plaintiffs contend that the definition of "expert advice or assistance" is vague as applied to them because they cannot determine what "other specialized knowledge" means.

**[10]** We agree with the district court that "the Federal Rules of Evidence's inclusion of the phrase 'scientific, technical, or other specialized knowledge' does not clarify the term 'expert advice or assistance' for the average person with no background in law." *DC-HLP III*, 380 F. Supp. 2d at 1151.

**[11]** At oral argument, the government stated that filing an amicus brief in support of a foreign terrorist organization would violate AEDPA's prohibition against providing "expert advice or assistance." Because the "other specialized knowledge" portion of the ban on providing "expert advice or assistance" continues to cover constitutionally protected advocacy, we hold that it is void for vagueness. *See HLP I*, 205 F.3d at 1137-38; *NAACP v. Button*, 371 U.S. 415, 432-33 (1963) (noting that vagueness and overbreadth depend on "the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application").

**[12]** The portion of the "expert advice or assistance" definition that refers to "scientific" and "technical" knowledge is not vague. Unlike "other specialized knowledge," which covers every conceivable subject, the meaning of "technical" and "scientific" is reasonably understandable to a person of ordinary intelligence. *See* Houghton Mifflin Reading Spelling and Vocabulary Word Lists (5th Grade), http://www-kes.stjohns.k12.fl.us/wordlists/5th/vocab2.htm (including "technical" as a fifth-grade vocabulary word); *see also* Tennessee Department of Education Third Grade Science Vocabulary, http://jc-schools.net/tutorials/vocab/sci-3.htm (including "scientific method" on third-grade vocabulary list).

### 3.   *"Service"*

**[13]** IRTPA amended the definition of "material support or resources" to add the prohibition on rendering "service" to a designated foreign terrorist organization. There is no statutory definition of the term "service."

Plaintiffs argue that proscribing "service" is vague because each of the other challenged provisions could be construed as a provision of "service." The district court agreed.

**[14]** We adopt the district court's holding and its reasoning. *See DC-HLP III*, 380 F. Supp. 2d at 1151-52. The term "service" presumably includes providing members of PKK and LTTE with "expert advice or assistance" on how to lobby or petition representative bodies such as the United Nations. "Service" would also include "training" members of PKK or LTTE on how to use humanitarian and international law to peacefully resolve ongoing disputes. Thus, we hold that the term "service" is impermissibly vague because "the statute defines 'service' to include 'training' or 'expert advice or assistance,' " and because " 'it is easy to imagine protected expression that falls within the bounds' of the term 'service.' " *Id.* at 1152.[8]

### 4. "Personnel"

In *HLP I*, we concluded that "personnel" was impermissibly vague because the term could be interpreted to encompass expressive activity protected by the First Amendment. *HLP I*, 205 F.3d at 1137. We stated that, "[i]t is easy to see how someone could be unsure about what AEDPA prohibits with the use of the term 'personnel,' as it blurs the line between protected expression and unprotected conduct." *Id.* We observed that "[s]omeone who advocates the cause of the PKK could be seen as supplying them with personnel . . . . But advocacy is pure speech protected by the First Amendment." *Id.*

As stated above, in 2004, Congress passed IRTPA which amended AEDPA. IRTPA added a limitation to the ban on providing "personnel." 18 U.S.C. § 2339B(h). Section 2339B(h) clarifies that section 2339B(a) criminalizes provid-

---

[8]Whether the outcome would be different if evidence were presented showing that "service" rendered to a designated foreign terrorist organization resulted in the receipt of money by the designated foreign terrorist organization itself is not an issue presented by this case. We therefore do not reach that issue.

ing "personnel" to a foreign terrorist organization only where a person, alone or with others, "[work]s under that terrorist organization's direction or control or . . . organize[s], manage[s], supervise[s], or otherwise direct[s] the operation of that organization." Section 2339B(h) also states that the ban on "personnel" does not criminalize the conduct of "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives." *Id.*

**[15]** As amended by IRTPA, AEDPA's prohibition on providing "personnel" is not vague because the ban no longer "blurs the line between protected expression and unprotected conduct." *HLP I*, 205 F.3d at 1137. Unlike the version of the statute before it was amended by IRTPA, the prohibition on "personnel" no longer criminalizes pure speech protected by the First Amendment. Section 2339B(h) clarifies that Plaintiffs advocating lawful causes of PKK and LTTE cannot be held liable for providing these organizations with "personnel" as long as they engage in such advocacy "entirely independently of th[ose] foreign terrorist organization[s]." 18 U.S.C. § 2339B(h).

**[16]** Because IRTPA's definition of "personnel" provides fair notice of prohibited conduct to a person of ordinary intelligence and no longer punishes protected speech, we hold that the term "personnel" as defined in IRTPA is not vague.

*C.　Overbreadth*

Plaintiffs argue that the terms "training," "personnel," "expert advice or assistance" and "service" are substantially overbroad. The district court rejected Plaintiffs' challenge. *See DC-HLP III*, 380 F. Supp.2d at 1152-53. We affirm.

**[17]** A statute is facially overbroad when its application to protected speech is "substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003)

(internal quotation marks and citations omitted). The Supreme Court held in *Hicks* that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Id.* at 124. The Court reasoned that the "concern with chilling protected speech attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct." *Id.* (internal quotation marks and citations omitted).

We have previously held that AEDPA's prohibition against providing "material support or resources" to a designated organization "is not aimed at interfering with the expressive component of [Plaintiffs'] conduct but at stopping aid to terrorist groups." *HLP I*, 205 F.3d at 1135. Thus, because the statute is not aimed primarily at speech, an overbreadth challenge is more difficult to show. However, we still conduct the *Hicks* analysis. That is, we decide whether the material support statute's application to protected speech is substantial when compared to the scope of the law's plainly legitimate applications. *See Hicks*, 539 U.S. at 118-19.

**[18]** Section 2339B(a)'s ban on provision of "material support or resources" to designated foreign terrorist organizations undoubtably has many legitimate applications. For instance, the importance of curbing terrorism cannot be underestimated. Cutting off "material support or resources" from terrorist organizations deprives them of means with which to carry out acts of terrorism and potentially leads to their demise. Thus, section 2339B(a) can legitimately be applied to criminalize facilitation of terrorism in the form of providing foreign terrorist organizations with income, weapons, or expertise in constructing explosive devices. *See HLP I*, 205 F.3d at 1133.

The Supreme Court cautioned in *Hicks* that "there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct."

*Hicks*, 539 U.S. at 119. Were we to restrain the government from enforcing section 2339B(a) that prohibits individuals in the United States from providing "material support or resources" to foreign terrorist organizations, we would potentially be placing our nation in danger of future terrorist attacks.

Moreover, although Plaintiffs may be able to identify particular instances of protected speech that may fall within the statute, those instances are not substantial when compared to the legitimate applications of section 2339B(a).

**[19]** Thus, because AEDPA section 2339B is not aimed at expressive conduct and because it does not cover a substantial amount of protected speech, we hold that the prohibition against providing "material support or resources" to a foreign terrorist organization is not facially overbroad.

### D. Licensing Scheme

**[20]** IRTPA added section 2339B(j), an entirely new section, to AEDPA. Section 2339B(j) allows the Secretary of State, with the concurrence of the Attorney General, to grant approval for individuals and organizations to carry out activities that would otherwise be considered providing "material support or resources" to designated foreign terrorist organizations. 18 U.S.C. § 2339B(j). Section 2339B(j) states that no one can be prosecuted under the terms " 'personnel,' 'training,' or 'expert advice or assistance' if the provision of that material support or resources to a foreign terrorist organization was approved by the Secretary of State with the concurrence of the Attorney General." 18 U.S.C. 2339B(j). The exception limits the scope of discretion by providing only that the "Secretary of State may not approve the provision of any material support that may be used to carry out terrorist activity." *Id.*

Plaintiffs argue that this provision constitutes an unconstitutional licensing scheme. We disagree.

Courts may entertain pre-enforcement facial challenges to a licensing scheme where the law has a "close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988). A licensing scheme is facially invalid if the "licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speaker." *Id*. The relevant censorship risks include "self-censorship by speakers in order to avoid being denied a license to speak" and the "difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action." *Id.*

In our first decision, we rejected Plaintiffs' challenge to the licensing scheme in another portion of AEDPA that allows the Secretary of State to designate a group as a foreign terrorist organization. *See HLP I*, 205 F.3d at 1136-37. We held that the Secretary of State's discretion to designate a group as a foreign terrorist organization was not unconstitutional. *See id*. We reasoned that "AEDPA does not regulate speech or association per se. Rather, the restriction is on the act of giving material support to designated foreign organizations." *Id.* at 1136-37. We reach the same conclusion here.

**[21]** Section 2339B(j) gives the Secretary of State the discretion to approve the provision of "material support or resources." It does not regulate speech per se. Rather, the statute permits the Secretary of State to authorize the otherwise prohibited provision of "material support or resources" to a designated foreign terrorist organization. Indeed, we clarified in *HLP I* that contributions of "material support or resources" to foreign entities designated as foreign terrorist organizations should *not* be equated with political expression and association itself, even if such organizations are engaged in political expression. *See HLP I*, 205 F.3d at 1134-35 (contrasting the

*Buckley* doctrine, where monetary support is a proxy for speech and is therefore a constitutionally protected activity). Thus, we hold that the discretion given to the Secretary poses no "real and substantial threat" to Plaintiffs' protected expression or their expressive conduct. *See City of Lakewood*, 486 U.S. at 759.

We recognize that it is possible for the Secretary to exercise his or her discretion in a way that discriminates against the donor of "material support or assistance." For example, the Secretary could conceivably exempt from prosecution a person who teaches peacemaking skills to members of Hezbollah, but deny Plaintiffs immunity from prosecution if they teach the same peacemaking skills to PKK. However, when evaluating the constitutionality of a licensing scheme, we look at how closely the prior restraint, *on its face*, regulates constitutionally protected activity. Here, even though it is possible for the Secretary to refuse to exercise his or her discretion to exempt from prosecution a disliked speaker, any such power is incidental. The statute does not give the Secretary "*substantial* power to discriminate based on the content or viewpoint of speech" or the identity of the speaker. *Id*. (emphasis added).

Moreover, in Plaintiffs' case, any potential for content or viewpoint-based discrimination or discrimination based on the identity of the speaker is significantly reduced because the government is enjoined from enforcing those provisions of the statute we hold vague. Thus, because Plaintiffs are already immune from prosecution for protected speech, the danger that the Secretary can base his or her exercise of discretion on Plaintiffs' identity or the content or viewpoint of Plaintiffs' message is almost non-existent.

**[22]** Accordingly, we affirm the district court's holding that section 2339B(j) does not have a close enough nexus to protected speech to allow a facial challenge.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.